**INDEPENDENT SCHOOL DISTRICT NO. 197, Plaintiff,**

**v.**

**W.R. GRACE & CO., individually, and as successor-in-interest to Zonolite Company and Western Mineral Products Company; John B. Sander & Company, Inc.; Sander & Company, Inc. (successor-in-interest to John B. Sander & Company), Defendants.**

**Civ. No. 4–89–594.**

United States District Court, D. Minnesota, Fourth Division.

Nov. 7, 1990.

Richard A. LaVerdiere, Hertogs, Fluegel Sieben, Polk, Jones & LaVerdiere, P.A., Hastings, Minn., (Edward Westbrook, Ness, Motley, Loadholt, Richardson & Poole, of counsel), Charleston, S.C., for plaintiff.

John C. Childs, J. Michael Schwartz, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, Minn., (Goodwin, Procter & Hoar, of counsel), Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on defendant W.R. Grace's motion for summary judgment and for certification of questions of law to the Minnesota Supreme Court.

## FACTS

This is an action for recovery of costs associated with removal of asbestos-containing fireproofing from Henry Sibley High School in Mendota Heights, Minnesota. Defendant W.R. Grace & Co.—Connecticut (Grace), a Connecticut corporation, is the manufacturer of Monokote, a fireproofing material applied to the school's beams and steel decks. Plaintiff is a body politic charged with the operation and management of public schools in Independent School District No. 197, located in Dakota County, State of Minnesota. Because asbestos has been identified as a potential carcinogen, federal regulations require that asbestos-containing material such as that present in Sibley High School must be removed during renovation or demolition at the latest. *See* 40 C.F.R. § 61.147. At the present time, the school district's asbestos-removal program for Henry Sibley High School is partially completed. Affidavit of Richard A. LaVerdiere.

On January 17, 1983, a class action was commenced in the United States District Court for the Eastern District of Pennsylvania on behalf of all school districts nationwide seeking recovery of removal costs associated with asbestos products. Plaintiff remained in that class until opting out on December 1, 1987.

On November 30, 1987, plaintiff commenced the present action in Dakota County District Court against defendant W.R. Grace & Co., as well as Switzer Construction Co., John B. Sander & Co. and Sander & Co., Inc. Defendant Switzer Construction Co. was dismissed with prejudice on October 17, 1988. On July 12, 1989, Grace removed the case from Dakota County District Court to the United States District Court for the District of Minnesota.

Plaintiff's complaint states nine claims for relief: (1) restitution, (2) negligence, (3) strict liability, (4) breach of express warranty, (5) breach of implied warranties of merchantability and fitness, (6) fraud and misrepresentation, (7) costs of monitoring the building for release of asbestos fibers, (8) conspiracy and (9) unfair trade practices pursuant to the Minnesota Unlawful Trade Practices Act, Minn.Stat. §§ 325D.09–D.16.

Defendant Grace now moves for summary judgment on the following grounds: (1) plaintiff's suit is time-barred by Minn.Stat. § 541.051; (2) plaintiff's time-barred action was not revived by Minn.Stat. § 541.22 because that statute is unconstitutional; (3) plaintiff's claims are preempted by federal regulation; (4) plaintiff's tort claims are barred by *Superwood Corp. v. Siempelkamp Corp.*, 311 N.W.2d 159 (Minn.1981) and progeny; (5) plaintiff's claims for breach of implied warranties of merchantability and fitness are unsupported by fact; (6) plaintiff's restitution count does not state a claim for relief; and (7) the Unlawful Trade Practices Act is inapplicable either on the law or the facts of this case. Each of these issues will be discussed below.[1]

DISCUSSION

I. *Whether Plaintiff's Claims are Time Barred by Minn.Stat. § 541.051*

It is undisputed that the Minnesota statute of limitations for improvements to real property applies to this case, Minn.Stat. § 541.051. That statute contains multiple time restrictions, including a two-year from discovery limitations period and a "statute of repose" which runs ten years from substantial completion of the construction. Defendant argues that both of these time limitations bar plaintiff's action on the grounds that plaintiff commenced this action on November 30, 1987, more than two years after discovering its injury, and more

than ten years after the construction of the school was substantially completed in 1971. Plaintiff argues that the two-year limitations period was tolled during the pendency of the class action in the United States District Court for the Eastern District of Pennsylvania of which it was a part until opting out December 1, 1987, and that there is a genuine issue of fact precluding summary judgment on the issue of whether it discovered its injury more than two years prior to the commencement of the class action on January 17, 1983. Plaintiff also argues that the ten-years-from-substantial-completion time limit does not apply because it falls within the exception contained in that statute for actions "where fraud is involved."

A. *Whether Plaintiff's Action is Time–Barred*

There is no dispute that Sibley High School was substantially completed within the meaning of section 541.051 on September 12, 1971, and that neither the instant action, nor the class action was filed within ten years of that date. Nor does plaintiff argue that it discovered its injury in the ninth or tenth year following substantial completion, 1980 or 1981, to permit extension of the time limit to twelve years pursuant to Minn.Stat. § 541.051, subd. 2.

■ Rather, plaintiff argues that the ten-year time limit does not apply because of defendant's fraud. Plaintiff argues that it need merely establish an issue of fact concerning whether defendant fraudulently concealed knowledge of the defective and hazardous nature of asbestos to except itself from operation of the ten-year time limit.[2] In *Wittmer v. Ruegemer*, 419 N.W.2d 493 (Minn.1988), the Minnesota Supreme Court held that pursuant to the fraud exception to Minn.Stat. § 541.051, if the defendant:

---

1. Plaintiff has filed a stipulation dismissing Count 4 for breach of express warranty, Count 7 for building monitoring, and Count 8 for conspiracy. Further, plaintiff has represented that it does not oppose defendant's motion for summary judgment on its claim for breach of implied warranty of fitness for a particular purpose.

2. Plaintiff acknowledges that the Minnesota Supreme Court has determined that fraud is relevant only to the ten-year time limit contained in Minn.Stat. § 541.051. *See Wittmer v. Ruegemer*, 419 N.W.2d 493, 497 (Minn.1988).

has by fraud prevented the plaintiff from discovering the defective and unsafe condition within fifteen [now ten] years after substantial completion of construction, the statute is tolled until the plaintiff could, by reasonable diligence, have discovered the defective condition.

*Wittmer*, 419 N.W.2d at 497. The Court continued:

In such circumstances, the party claiming fraudulent concealment has the burden of showing that the concealment could not have been discovered sooner by reasonable diligence on his part and was not the result of his own negligence.

*Id.* at 498 n. 4. Thus, contrary to plaintiff's assertion, fraud is relevant in section 541.051 only to the extent that defendant's fraud may have prevented plaintiff from discovering the defective condition. *See also O'Brien v. UOP, Inc.*, 701 F.Supp. 714, 716–17 (D.Minn.1988) (fraudulent conduct of defendants did not prevent accrual of cause of action where plaintiff aware of product defect).

■ Thus, the first issue is whether Grace's allegedly fraudulent conduct prevented plaintiff from discovering the defective condition of the asbestos within ten years from substantial completion of the building in September of 1971. To resolve this question, the Court must first address whether there is a genuine issue of material fact concerning whether Grace fraudulently concealed knowledge of the hazardous nature of the asbestos during the pertinent time period. Plaintiff has alleged that defendant both knew of the presence of the asbestos in plaintiff's building and of the hazards thereof and fraudulently concealed that knowledge from plaintiff. In support of its allegations, plaintiff incorporates by reference the affidavits and exhibits filed in support of its motion to amend its complaint to add punitive damages. Taken together, the Court finds that these exhibits create a genuine issue concerning whether defendant knew that Sibley High School contained asbestos products, and that asbestos may be linked to serious health effects, and whether that knowledge was

fraudulently concealed from the public, including plaintiff.

The next issue under *Wittmer* is whether defendant's alleged fraudulent concealment of these facts prevented plaintiff from discovering its injury. Under *Wittmer*, if plaintiff was aware of the hazard posed by the asbestos notwithstanding Grace's alleged concealment, plaintiff is not saved from operation of the ten-year statute of repose set forth in section 541.051.

Minnesota courts have identified the following factors to assist in the determination of when a plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury for which relief is sought and the causal connection between the injury and a defendant's conduct. Essentially, this is the same determination required by *Wittmer* in relation to the fraud exception to the statute of repose. In *Independent School District No. 622 v. Bor–Son Construction, Inc.*, CIVIL C5–84–1701 (Minn.Dist.Ct. Mar. 25, 1987), the court held that a cause of action for asbestos removal accrued when plaintiff learned the type and amount of asbestos used in the particular building, and that the presence of asbestos constituted a hazard requiring abatement. Slip op. at 15. *See also Federal Reserve Bank v. Carey–Canada, et al.*, CIVIL 3–86–185, 1988 WL 220489 (D.Minn. Aug. 31, 1988) (applying *Independent School Dist. 622*).

Here, defendant argues that the school district should have known of the presence of asbestos in its building inasmuch as the architect's specifications for the building specified use of an asbestos-containing fireproofing material. Defendant argues that this knowledge, coupled with information contained in memoranda received by the district from the Minnesota Department of Education in 1978 and 1979 expressing concerns about the possible presence of asbestos in school buildings and advising school superintendents to begin investigations to determine if asbestos products were located in their buildings, are sufficient to charge plaintiff with knowledge of the hazard posed by the presence of asbestos as early as 1978 or 1979. Thus, defendant

argues that plaintiff discovered the defective condition of the asbestos within ten years of substantial completion of the project, and cannot therefore take refuge in the fraud exception.

The plaintiff contends that it was not aware of the presence of asbestos in Sibley High School until December 19, 1983, when it received the results of a sampling test from Twin City Testing which confirmed the presence of asbestos. LaVerdiere Aff. Exh. B. Plaintiff also stresses that while the initial plans for the building specified use of an unnamed asbestos product, an addendum to the specifications provided for the use of Monokote, and did not identify it as containing asbestos. Plaintiff contends that Monokote was marketed in the early 1970's as an asbestos-free product, and that only chemical analysis could determine whether the material contained asbestos. Plaintiff also relies upon the affidavit of Donald G. Zahn, Director of Business Affairs for Independent School District No. 197 from 1961 to 1986. Zahn states that during the planning and construction of Sibley High School he had ongoing contacts with architects and contractors, and that had he known that the fireproofing placed in the school contained asbestos, and that the asbestos was hazardous and would ultimately have to be removed from the building at tremendous cost, he would not have approved of the use of the asbestos-containing fireproofing. Affidavit of Donald G. Zahn ¶ 1–3.

■ In response, defendant submits the results of two studies dated May 27, 1982 and June 1, 1982, both of which note the presence of asbestos in material sampled from School District No. 197. Affidavit of J. Michael Schwartz Exh. 9. Grace does not, however, supply any test results confirming the presence of asbestos prior to these dates, and there is no evidence that plaintiff in fact discovered the hazard within the ten-year period established by the statute of repose. Whether plaintiff reasonably could have discovered the facts any sooner is a genuine issue of fact for the jury. *See Wittmer,* 419 N.W.2d at 497. Under *Wittmer,* the statute of repose in this case was tolled until the plaintiff discovered, or reasonably could have discovered, the hazard. *See Wittmer,* 419 N.W.2d at 497. Since the class action was filed January 17, 1983, less than one year after plaintiff apparently learned of the presence of asbestos, it is apparent that the action is not barred by the ten-year statute of repose.[3]

■ Having determined that the ten-year statute of repose does not bar plaintiff's action, the only remaining issue is whether plaintiff brought suit within two years from discovery of its injury. As noted, *supra* at note 3, the operation of any statute of limitation was tolled as to plaintiff between January 17, 1983 and December 1, 1987, while plaintiff was participating in the class action pending in the United States District Court for the Eastern District of Pennsylvania. Since the present action was filed November 30, 1987, the only issue is whether plaintiff discovered its injury more than two years prior to the filing of the class action, that is, prior to January 17, 1981. As discussed above, there is no indication that testing revealed the presence of asbestos in Sibley High School before May 27, 1982. Thus, it appears that the action was not barred prior to the filing of the class action. Since plaintiff filed the present action the day before opting out of the class action it appears that the two-year statute of limitations contained in Minn.Stat. § 541.051 was not violated.

The Court finds that genuine issues of material fact preclude the entry of summary judgment on the question of whether plaintiff's cause of action is barred by ei-

**3.** In *American Pipe and Construction Co. v. Utah,* 414 U.S. 538, 550, 94 S.Ct. 756, 764, 38 L.Ed.2d 713 (1974), the United States Supreme Court held that the commencement of a class action pursuant to Fed.R.Civ.P. 23 tolls the applicable statute of limitations as to all asserted members of the class. *See also Independent*

*School Dist. No. 622,* CIVIL C5–84–1701 (Minn. Dist.Ct. Mar. 25, 1987) (tolling running of statute of limitations from January 17, 1983, the date the class action was commenced, until April 17, 1984, the date the plaintiff opted out of that action and filed its own suit).

292

ther of the limitations periods set forth in Minn.Stat. § 541.051.

### B. *Whether the Asbestos Revival Statute is Constitutional*

Even if the action were time barred plaintiff argues that Minn.Stat. § 541.22, subd. 2, "revives" the action. The statute provides:

Notwithstanding any other law to the contrary, an action to recover for (1) removal of asbestos or materials containing asbestos from a building, (2) other measures taken to locate, correct, or ameliorate any problem related to asbestos in a building, or (3) reimbursement for removal, correction, or amelioration of an asbestos problem that would otherwise be barred before July 1, 1990, as a result of expiration of the applicable period of limitation, is revived or extended. An asbestos action revived or extended under this subdivision may be begun before July 1, 1990.

Defendant raises three constitutional challenges to Minn.Stat. § 541.22: (1) that it constitutes a "special law" prohibited by Article XII, Section 1 of the Minnesota Constitution; (2) that it violates the "single purpose" provision of Article IV, Section 17 of the Minnesota Constitution; and (3) that the statute deprives defendant of property without due process of law. In addition, defendant moves to certify the first two of these questions to the Minnesota Supreme Court.

### 1. *Whether the Revival Statute is an Unconstitutional "Special Law"*

█ Plaintiff begins by noting that Minn.Stat. § 541.22 is subject to a presumption in favor of its constitutionality. *In re Tveten*, 402 N.W.2d 551, 556 (Minn. 1987). The party challenging a statute's constitutionality bears the burden of demonstrating beyond a reasonable doubt that the statute violates a constitutional provision. *Id.* In *Tveten*, the Minnesota Supreme Court articulated a three-step test for determining whether a particular legislative classification violates Article XII, Section 1 of the Minnesota Constitution.

According to this test, a classification is proper if:

(a) the classification applies to and embraces all who are similarly situated with respect to conditions or wants justifying appropriate legislation;

(b) the distinctions are not manifestly arbitrary or fanciful but are genuine and substantial so as to provide a natural and reasonable basis justifying the distinction; and

(c) there is an evident connection between the distinctive needs peculiar to the class and the remedy or regulations therefor which the law purports to provide.

*Tveten*, 402 N.W.2d at 558.

The defendant raises essentially two arguments why the revival statute fails the *Tveten* test: (1) the statute arbitrarily singles out asbestos and excludes other toxic substances such as lead, formaldehyde, mercury, radon and PCB's and (2) the statute provides a remedy only for building owners to the exclusion of others who have been exposed to asbestos-containing materials. Defendant notes legislative history suggesting that an important motivation for passage of the legislation was to support litigation brought by the state against asbestos manufacturers for the costs of abatement relating to construction projects in publicly-owned buildings.

Plaintiff argues that the legislature properly recognized that asbestos-related property claims are legitimately distinguishable from other types of property claims. Plaintiff stresses the numerous federal and state statutes aimed at addressing the asbestos hazard, particularly in schools. *See* Asbestos School Hazard Detection and Control Act, 20 U.S.C. § 3601, *et seq.;* Asbestos School Hazard Abatement Act of 1984, 20 U.S.C. § 4011, *et seq.;* Asbestos Hazard Emergency Response Act, 15 U.S.C. § 2641, *et seq.;* Asbestos Abatement Act, Minn.Stat. § 326.72, *et seq.* Plaintiff argues that revival of time-barred asbestos property damage cases is justified by the fact that asbestos-containing products incorporated in buildings prior to the date they were banned in April 1973 are only

now becoming friable (deteriorating to the point where fibers are easily released). The revival statute, according to this reasoning, recognizes that the asbestos, unlike other toxic substances, may become a problem requiring abatement only after the normally applicable time limitations have expired.

In addition, plaintiff notes that asbestos fibers are the only known causes of mesothelioma, a form of cancer which lines the chest and abdominal cavities. Mesothelioma, according to plaintiff, is distinguishable from other toxin-induced diseases in that it is believed not to be a dose-related disease but rather can be induced by a single exposure to asbestos, and that removal is therefore more urgent than for other substances.

In response to defendant's argument that the revival statute does not cover all who are similarly situated since it revives causes of action only for building owners, plaintiff contends that the legislature legitimately recognized the different concerns facing building owners and individuals pursuing personal injury claims.

Defendant cites one case in support of its argument that the asbestos revival statute constitutes unconstitutional special legislation. In *Celotex Corp. v. St. Joseph Hospital*, 259 Ga. 108, 376 S.E.2d 880 (1989), a hospital sought to recover from a manufacturer the cost of removing asbestos-containing fireproofing material. The fireproofing material had been applied in 1969 and 1970, but the presence of asbestos was not discovered until March of 1984 during a subsequent renovation. Defendant argued that plaintiff's claims were barred by a four-year statute of limitations normally applicable to such an action. Plaintiff argued that the action was timely according to a revival statute effective April 14, 1988 which exempted actions against manufacturers or suppliers of asbestos-containing material for the costs of removal of such material or other abatement measures relating to the presence of asbestos in a building. *See* OCGA § 9–3–30.1. Upon questions certified by the United States Court of Appeals for the Eleventh Circuit,

the Supreme Court of Georgia held that the revival statute constituted a special law which violated Article III, Section 6, Paragraph 4(a) of the Constitution of Georgia of 1983 which provides:

Laws of a general nature shall have uniform operation throughout the state and no local or special law shall be enacted in any case for which provision has been made by an existing general law....

*Celotex*, 376 S.E.2d at 882. According to the court, Georgia's constitution "does not prohibit special laws per se. The legislature may enact special laws affecting special classes, but it cannot do so if it has previously legislated in that area by general law nor may it do so if the classification of those affected is unreasonable." *Id.* The court concluded that the revival statute "singles out for special treatment property claims against manufacturers and suppliers of asbestos and differentiates them from all other claims that might be based upon other hazardous or toxic substances. Because we do not find this separate classification to be reasonable, this statute does not meet the constitutional standards." *Id.*

Plaintiff argues that the *Celotex* case is distinguishable because the statute at issue in that case applied only to manufacturers and suppliers of asbestos and not to all potential defendants, an arbitrary distinction removed from the Minnesota revival statute in 1988. It is clear, however, that the Georgia court did not rely upon this aspect of the law, but rather concluded that the singling out of asbestos from other toxic products lacked a rational basis.

*Celotex* was recently rejected, however, in *T.H.S. Northstar v. W.R. Grace & Co.–Conn.*, CIVIL 3–87–676, 1990 WL 257287 (D.Minn. Feb. 7, 1990). The court rejected Grace's argument that the revival statute was barred by the Minnesota constitutional prohibition against special legislation, declining to follow the Georgia Supreme Court's lead in *Celotex*. The Court found that the opinion relied upon state cases that indicated that Georgia's standard for determining whether a statute was general or special is different from that of Minnesota. *T.H.S. Northstar*, Plaintiff's Memo-

randum in Response to Grace's Motion for Summary Judgment, Exh. A, Transcript of Opinion at 14. The court held that the revival statute did not violate the Minnesota constitutional prohibition against special legislation. The court rejected defendant's argument that the legislature's distinction between property owners and personal injury claimants was arbitrary, noting that the statute did not distinguish between publicly and privately owned buildings or between commercial and residential buildings, but rather included within its ambit the claims of all building owners. The court further found that the statute's focus upon asbestos to the exclusion of other toxic substances was supported by "a natural and reasonable basis justifying the distinction," *citing Tveten.* The court noted the extensive legislation relating to asbestos, and the "generally accepted proposition" that mesothelioma was not dose related but was caused by a single exposure to asbestos. The court held that defendants failed to establish beyond a reasonable doubt that there was no genuine or substantial distinction between asbestos and other toxic building materials.

■ The Court agrees with the court in *T.H.S. Northstar* that the revival statute satisfies the *Tveten* test for determining whether the act constitutes special legislation in violation of the Minnesota Constitution. The Court finds that Grace has not established beyond a reasonable doubt that the revival statute neglects potential claimants who are "similarly situated;" that is based upon distinctions which are "manifestly arbitrary or fanciful;" or that there is lacking an "evident connection" between the needs of building owners and the revival of causes of action barred by statutes of limitation. That asbestos may only become friable, and therefore in need of removal, long after installation supplies a rational basis for distinguishing asbestos from other toxic products which may be installed in a building for purposes of reviving time-barred causes of action. Drawing a distinction between building owners and personal injury claimants, however, is more difficult; however, there is little evidence on this question on the record before the Court. In *State v. Broden,* 181 Minn. 341, 232 N.W. 517 (1930), the court stressed that in legislating for the public welfare, "all evils cannot be reached at once, nor every desirable object gained in one legislative session...." *Id.* 232 N.W. at 519. The court recognized that the legislature was "free to recognize degrees of harm, and ... may confine its restrictions to those classes of cases where the need is deemed clearest." *Id.* In view of the fact that defendant has the burden of proving beyond a reasonable doubt the unconstitutionality of the statute, in the absence of any evidence suggesting that personal injury claimants and building owners must be treated the same, the presumption in favor of constitutionality established in *In re Tveten, supra,* should control the result. Accordingly, the Court holds that the revival statute does not violate the Minnesota constitutional prohibition against special legislation.

2. *Whether the Revival Statute Violates the Single Purpose Provision of the Minnesota Constitution*

Article IV, Section 17 of the Minnesota Constitution provides:

> No law shall embrace more than one subject, which shall be expressed in its title.

The purpose of this constitutional requirement is to assure that members of the legislature will be apprised of the contents of an act before voting to approve it. *Western States Utilities Co. v. Waseca,* 242 Minn. 302, 65 N.W.2d 255, 265 (1954); *Lifteau v. Metropolitan Sports Facilities Commission,* 270 N.W.2d 749, 753 (Minn. 1978). The provision also seeks to assure legislative consideration of distinct measures on their merits. As the court explained in *State v. Cassidy,* 22 Minn. 312, 322 (Minn.1875), the purpose of the one-subject requirement:

> was to secure to every distinct measure of legislation a separate consideration and decision, dependent solely upon its individual merits, by prohibiting the fraudulent insertion therein of matters wholly foreign, and in no way related to

or connected with its subject, and by preventing the combination of different measures, dissimilar in character, purposes and objects, but united together with the sole view, by this means, of compelling the requisite support to secure their passage.

The court has made clear that the one-subject provision is to be liberally construed so as to avoid serious interference with the practical business of legislation:

> All that is necessary is that the action embrace some one general subject; and by this is meant, merely, that all matters treated of should fall under some one general idea, be so connected with or related to each other, either logically or in popular understanding, as to be parts of, or germane to, one general subject.

*State ex rel. Pearson v. Probate Court,* 205 Minn. 545, 287 N.W. 297, 300 (1939). *See also Bernstein v. Commissioner of Public Safety,* 351 N.W.2d 24, 25 (Minn.Ct. App.1984).

In support of its argument that the revival statute violated the one-subject provision, defendant focuses upon the fact that the statute was first enacted as part of a 1987 act entitled "An Act Relating to Insurance," consisting of numerous provisions relating to insurance. Plaintiff notes, however, that the statute was reenacted in 1988 as part of "An Act Relating to Civil Actions." The title of the 1988 bill reads as follows:

> An Act Relating to Civil Actions; Clarifying the Statute of Limitations for Damages Based on Services or Construction to Improve Real Property; Clarifying the Statute of Limitations for Asbestos Actions; Amending Minnesota Statutes 1986 Section 541.051, Subdivision 1; and Minnesota Statutes 1987 Supplement Section 541.22, Subdivision 2.

Plaintiff also contends that the 1988 amendment was subject to specific debate and thereby satisfied the requirement of "separate attention and consideration."

■ In *T.H.S. Northstar, supra,* the court agreed that the pertinent inquiry was whether the *1988* amendment satisfied the one-subject requirement, not whether the original enactment met that requirement. The court concluded that the legislature had the opportunity to fully consider the issue at least in the 1988 session:

> The legislature had the opportunity to give full consideration to the statute of limitations with regard to asbestos in buildings and that, therefore, the revival statute received separate consideration and was enacted as a distinct measure of legislation according to its merit.

*T.H.S. Northstar, supra,* at 10. The Court agrees that the issue is whether the 1988 amendment conformed to the one-subject requirement, not the 1987 enactment. Even if the 1987 enactment was enacted in such a way as to preclude effective legislative consideration, clearly that defect was remedied when in 1988 the legislature considered the issue anew and decided to preserve the revival statute in amended form. Moreover, the Court finds that neither the 1988 amendment nor the 1987 enactment violated the one-subject requirement. While the 1988 bill was more narrowly tailored to the subject of the revival statute, and announced the subject more clearly in its title, the 1987 enactment of the revival statute, did fall within the embrace of "some one general subject," *i.e.,* insurance. While the revival statute does not specifically refer to insurance, it appears that the statute was enacted as part of the legislature's global consideration of liability issues and their impact on insurance rates. Certainly, revival of a class of claims previously barred by a statute of limitations has a direct impact on liability issues and, necessarily, insurance rates. *See* Transcript of House Judiciary Committee Meeting of April 27, 1987, discussing revival of asbestos claims, Schwartz Aff. Exh. 19 ("we will be dealing in the morning session of the meeting with the tort liability bills ... what I'd like to do is start with the omnibus bill and hear from you, Senator Luther, on those sections of the omnibus insurance bill which relates to tort liability."). Accordingly, the Court finds that the revival statute does not violate the single-subject requirement of the Minnesota Constitution.

3. *Whether Application of the Revival Statute Deprives Defendant of Property Without Due Process of Law*

■ A legislature may retroactively modify a statute of limitations without depriving a potential defendant of a vested property right. *See Campbell v. Holt,* 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885); *Donaldson v. Chase Securities Corp.,* 216 Minn. 269, 13 N.W.2d 1 (1943), *aff'd* 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945). As the Minnesota Supreme Court held in *Donaldson:*

> Statutes of limitation which only bar the recovery of a debt or damages for tort are a matter of legislative public policy or expediency and may be changed as legislative wisdom dictates. The bar of such statutes may be lifted without violating the due process clauses of either the state or federal constitutions.

*Id.* 13 N.W.2d at 5. *See Nachtsheim v. Wartnick,* 411 N.W.2d 882, 885 (Minn.Ct. App.1987), *review denied* (Oct. 28, 1987). The Minnesota Supreme Court in *Donaldson* relied upon an early United States Supreme Court decision, *Campbell v. Holt, supra.* In affirming *Donaldson,* the United States Supreme Court also reaffirmed its holding in *Campbell:*

> In *Campbell v. Holt* … this Court held that where a lapse of time has not invested a party with title to real or personal property, a state legislature, consistently with the fourteenth amendment, may repeal or extend the statute of limitations, even after right of action is barred thereby, restore to the plaintiff his remedy, and divest the defendant of the statutory bar. This has long stood as a statement of the law of the fourteenth amendment, and we agree with the court below that its holding is applicable here and fatal to the contentions of appellant.

*Donaldson,* 325 U.S. at 311–12, 65 S.Ct. at 1141. At issue in *Donaldson* was a revision of the Minnesota blue sky law which had the effect of lifting the bar of a statute of limitations in pending litigation. The Court noted the liability at issue stemmed from common law and the defendant had "acquired no vested right to immunity from a remedy for its wrong in selling unregistered securities" by virtue of the statute of limitations applicable prior to the new enactment. *Donaldson,* 325 U.S. at 312 n. 8, 65 S.Ct. at 1141 n. 8. The Court concluded that reinstatement of the remedy by the state legislature did not infringe any federal right under the fourteenth amendment. *Donaldson* was reaffirmed in *Electrical Workers v. Robbins & Myers, Inc.,* 429 U.S. 229, 243–44, 97 S.Ct. 441, 450–51, 50 L.Ed.2d 427 (1976).

Defendant argues that these cases are distinguishable because at issue in this case is the impact of the revival statute on a statute of "repose," not a statute of limitations. Defendant argues that the ten-year time limit constitutes a statute of "repose" which, to the extent that it cuts off a right of action prior to its accrual, vests a property right in those whom it immunizes.

Defendant relies upon *School Board of Norfolk v. U.S. Gypsum Co.,* 234 Va. 32, 360 S.E.2d 325, 330 (1987). In *Norfolk,* on questions certified by the United States District Court for the Eastern District of Virginia, the Supreme Court of Virginia held that a statute which revived asbestos property damage claims which had been barred by a statute of repose violated the due process clause of the Virginia Constitution. According to the court, the statute at issue was a statute of "repose" rather than one of limitation, in that it began to run from the occurrence of an event unrelated to the accrual of the cause of action. With such a statute, the expiration of the time extinguishes not only the legal remedy, but also all causes of action, including those which may later accrue, as well as those already accrued. *Id.* 360 S.E.2d at 327–28. Accordingly, the court concluded that a statute of repose was "intended as a substantive definition of rights as distinguished from a procedural limitation on the remedy used to enforce rights." *Id.* 360 S.E.2d at 328. The court held that the rights bestowed by the statute of repose upon the defendant were substantive and as such could not be impaired by retroactive application of the revival statute. *Id.* 360 S.E.2d at 328.

A contrary result was reached under the United States Constitution in *Wesley Theological Seminary of the United Methodist Church v. U.S. Gypsum Co.*, 876 F.2d 119 (D.C.Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1296, 108 L.Ed.2d 473 (1990). In *Wesley,* the United States Court of Appeals for the District of Columbia held that an amendment to a district law governing the statute of repose for improvements to real property did not violate the due process clause of the fifth amendment merely because it restored a cause of action against an asbestos manufacturer which had been time barred prior to the amendment. The district court had concluded that the earlier version had conferred on defendant a "substantive" right not to be sued which could not be retroactively divested without violating the due process clause. The court of appeals reversed, citing the United States Supreme Court decisions in *Robbins & Myers, Donaldson* and *Holt, supra,* and rejecting a distinction based on the fact that the statute of repose conferred "substantive rights" while a statute of limitations governed purely procedural rights. The court cited the following from *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976), wherein the Court rejected due process objections to a statute which established new liability for coal mine operators retroactive to injuries occurring prior to the date of the act's passage:

> [L]egislative acts adjusting the burdens and benefits of economic life come to the court with the presumption of constitutionality, and ... the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way.... [O]ur cases are clear that legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations. This is true even though the effect of the legislation is to impose a new duty or liability based on past acts.

*Usery,* 428 U.S. at 15–16, 96 S.Ct. at 2892. The Court also cited *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984), wherein the Court sustained an act which retroactively imposed upon employers liability for withdrawing from multi-employer pension plans:

> [T]he strong deference accorded legislation in the field of national economic policy is no less applicable when that legislation is applied retroactively. Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches....

*Pension Benefit Guaranty Corp.,* 467 U.S. at 729, 104 S.Ct. at 2717.

The court in *Wesley,* applying *Turner Elkhorn* and *Gray,* concluded:

> We cannot say it is irrational for the District to decide that the losses due to defects in building materials discovered long after installation should fall on the supplier rather than the building's owner.

*Wesley,* 876 F.2d at 122. The court rejected defendant's distinction between a statute of repose and one of limitations as "somewhat metaphysical," *id.* at 122, and immaterial to the constitutional issue. *Id.* at 123. The court rejected defendant's argument that *Turner Elkhorn* and *Gray* were distinguishable on the grounds that in those situations the legislatures were imposing liability for past acts which had not been previously addressed:

> We fail to perceive a distinction of constitutional magnitude between an expectation of nonliability that arises from legislative silence and common law non-liability, and one that arises from the type of affirmative legislative action present in this case.

*Id. Accord T.H.S. Northstar, supra,* at 14–15 (rejecting *School Board of Norfolk,* and following *Wesley* ("[t]he court also finds it difficult to adopt the view that the statutes of repose by their nature create substantive property rights in defendants that cannot be retroactively removed by a state legislature")). *See also In re State and Regents Building Asbestos Cases,*

*(File Nos. 99081, 99082)*, slip op. at 1 (Dakota Cty.Dist.Ct. Mar. 1, 1989) ("defendants assert that a statute of repose, unlike a statute of limitations, vests a property right in any defendant within its purview. However, an interest in freedom from civil liability is not a constitutionally protected property right.... Minn.Stat. § 541.22, therefore does not deprive the defendants of due process.").

■ The Court will follow the courts in *Wesley, T.H.S. Northstar,* and *In re School Asbestos Cases,* and reject the reasoning of the Virginia Supreme Court in the *School Board of Norfolk* case. Defendant cites no court which has held that a statute of repose cannot be modified under the Due Process Clause of the United States Constitution. (Note—*School Board of Norfolk, supra,* was based on the Virginia Constitution.) In the absence of such authority, the Court will follow the leading cases which have sustained retroactive modification of time limitations, and affirm the revival statute against defendant's due process challenge.

C. *Whether the Court Should Certify the "Special Legislation" and "Single Subject" Issues to the Minnesota Supreme Court*

■ Minnesota has adopted the Uniform Certification of Questions of Law Act which provides that the Minnesota Supreme Court may answer questions of law certified to it by, *inter alia,* a United States district court

> if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state.

Minn.Stat. § 480.061, subd. 1. On issues of state law, the federal court is obliged to adopt the rule which it believes the state court would apply. *Bernhardt v. Polygraphic Co. of America,* 350 U.S. 198, 202–05, 76 S.Ct. 273, 275–77, 100 L.Ed. 199 (1956); *Hatfield v. Bishop Clarkson Memorial Hospital,* 701 F.2d 1266, 1267 (8th Cir.1982). The decision to certify a given question, however, rests in the sound discretion of the federal court. *Lehman Bros. v. Schein,* 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974).

Defendant argues that the issues raised by its challenges to the revival statute based on two provisions of the Minnesota Constitution ought to be decided in the first instance by the Minnesota Supreme Court. Defendant argues that the same issues are being raised in state and federal courts throughout Minnesota and that a definitive ruling by the Minnesota Supreme Court on these issues would save judicial time and resources. Defendant notes that both the Georgia and Virginia Supreme Courts have decided constitutional challenges to revival statutes similar to that at issue in this case. *See Celotex,* 376 S.E.2d 880; *School Board of Norfolk,* 360 S.E.2d 325.

Plaintiff argues that certification is not necessary in light of the extensive precedent interpreting the special law and single-subject provisions of the Minnesota Constitution. Plaintiff argues that certification at this point would unduly delay trial of this matter. Plaintiff further stresses that decision of the constitutional questions are not necessary in view of its position that the action was timely filed even without regard to the revival statute. Plaintiff notes that the court in *T.H.S. Northstar* declined to certify the same questions to the Minnesota Supreme Court. *T.H.S. Northstar,* at 23–24, 29–30.

■ The Court finds that there is sufficient case law from the Minnesota Supreme Court articulating the appropriate test to be applied in resolving challenges to legislation under the special law and single-subject provisions of the Minnesota Constitution to provide a meaningful basis for resolution of the questions posed by defendant's challenges. Moreover, in light of the Court's conclusion that the action was timely filed, without regard to the revival statute, the Court's findings on the constitutional questions are in the alternative only, further counselling against certification. Accordingly, defendant's motion for

certification to the Minnesota Supreme Court will be denied.

The Court finds that the Minnesota revival statute for asbestos property claims, Minn.Stat. § 541.22, subd. 2, is not unconstitutional. To the extent plaintiff's claims were otherwise barred by Minn.Stat. § 541.051, they were resolved by section 541.22, subd. 2.

## II. *Whether Plaintiff's Tort Claims are Barred by the Superwood Doctrine*

Defendant argues that plaintiff I.S.D. 197 is legally barred from asserting strict liability and negligence claims by the economic loss doctrine. The leading case in Minnesota explaining the economic loss doctrine is *Superwood Corp. v. Siempelkamp Corp.*, 311 N.W.2d 159 (Minn.1981). In *Superwood,* the purchaser of a ́hot press, which was defectively manufactured, sued under tort theories of liability. *Id.* at 160. The only damage claimed was to the hot press itself. *Id.* The Minnesota Supreme Court held that when the only claim is economic loss arising from a commercial transaction, tort remedies are not available. The court concluded that the U.C.C. should generally control in commercial transactions.[4] *Id.* at 162. The court held that tort remedies were available only if the loss involved personal injuries or damage to "other property." *Id.* Thus, in *Superwood* the court denied the plaintiff tort damages.

The exception for "other property" has now been eliminated. The Minnesota Supreme Court in *Hapka v. Paquin Farms,* 458 N.W.2d 683 (Minn.1990), considered the validity of the "other property" exception to the economic loss rule. In *Hapka,* the plaintiff was a commercial purchaser of seed potatoes. The potatoes were infected with "ring rot," a highly infectious disease. Plaintiffs sued under various tort theories for the ́lost production from the diseased potatoes and for damages the diseased potatoes spread to previously healthy seed potatoes. *Hapka,* 458 N.W.2d at 685. Plaintiff argued that the damage caused by the "ring rot" to previously healthy potatoes satisfied the "other property" exception to *Superwood.*

In rejecting plaintiff's tort claims, the court overruled the "other property" exception discussed in *Superwood. Hapka,* 458 N.W.2d at 688. The majority stressed that the Uniform Commercial Code should normally control the remedy available in commercial contracts. *Hapka,* 458 N.W.2d at 688. Importantly, the court focused its opinion on cases where the claim was for economic loss. The court noted:

> [T]he issues which are before us center on the scope of the holding in *Superwood* and the availability of tort theories of negligence and strict products liability to support an award of damages for *economic losses.*

*Hapka,* 458 N.W.2d at 686 (emphasis added). The *Hapka* court concluded that the plaintiff could not sue in tort because the economic loss doctrine limits the assessment of damages to U.C.C. remedies.

Defendant argues that *Hapka* is controlling on this issue. Defendant's theory is that plaintiff is suing for economic loss in a commercial context. Accordingly, the defendant argues the alleged damage the asbestos caused to the school building is damage to "other property." Defendant postulates that *Hapka* forecloses this action because the "other property" exception to the economic loss rule has been eliminated. The plaintiff denies that its claim is for

---

4. The scope of available contract remedies is found in Article 2 of the Uniform Commercial Code. The Code allows parties to bargain over the extent of warranties and liability. A ́manufacturer can restrict its liabilities, within limits, by disclaiming warranties or limiting remedies. *See* UCC §§ 2–316, 2–719. The rationale for allowing manufacturers the right to waive future liability for defective products is that the market should allow buyers and sellers to negotiate all aspects of ́a sale. A buyer could theoretically bargain for a lesser sale price in return for waiving the rights to future damages from a defective or dangerous product. This theory assumes relatively equal bargaining power and information between the parties. *See* Connaughton, J.L., *Recovery for Risk Comes of Age: Asbestos in Schools and the Duty to Abate a Latent Environmental Hazard,* 83 Nw.U.L.Rev. 512, 525.

economic loss. "Economic loss" is defined as:

the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.

*Minneapolis Society of Fine Arts v. Parker–Klein*, 354 N.W.2d 816, 821 (Minn. 1984), *citing* Note, *Manufacturers' Liability to Remote Purchasers for Economic Loss Damages—Tort or Contract?*, 114 U.Pa.L.Rev. 539, 541 (1966).[5]

Several Minnesota state and federal courts have addressed the issue of asbestos building contamination and economic loss. In *Independent School District No. 622 v. Keene Corp.*, No. C5–84–1701 (Minn. Dist.Ct. Sept. 7, 1990), plaintiff claimed that asbestos fireproofing in a school building was causing the entire facility to be contaminated. Plaintiff sued under tort theories. Defendant filed for summary judgment and argued that negligence theories of damage were not available under the economic loss doctrine. The court considered the issue in light of the *Superwood* and *Hapka* decisions.

In ruling for plaintiff, the court examined the definition of "economic loss." The court decided that in the context of asbestos building contamination:

There are no allegations that the fireproofing material failed to perform its function as fireproofing material. Plaintiff is alleging that the asbestos in the fireproofing material creates a danger to the health of those who use the school, requiring Plaintiff to remove the material. This is not economic loss....

*Independent School District No. 622*, slip op. at 4 (citations omitted). The court ruled for the plaintiff and denied the defendant's motion for summary judgment.

The issue was also considered in *Federal Reserve Bank of Minneapolis v. Carey Canada, Inc.*, CIVIL 3–86–185, 1988 WL 220489 (D.Minn. Aug. 30, 1988). The claim

was for tort damages arising from asbestos contamination of a building. The court held that under Minnesota law the asbestos damage was not mere economic loss. *Federal Reserve*, slip op. at 7. The same result was reached in *Miller–Dwan Medical Center v. National Gypsum Co., Inc.*, CIVIL 5–89–71 (D.Minn. Nov. 17, 1989). The *Miller–Dwan* court reviewed a claim for asbestos related building contamination. The court held that contract damages should be the ordinary remedy for failure of a product in a commercial transaction. The court found, however, that "the unusual claim for damages which can be seen as separate and apart from ordinary risk of a commercial transaction can sound in tort." *Miller–Dwan*, slip op. at 15. The court found that in the asbestos building contamination context, economic loss was not the legal claim. The court noted:

This loss [from asbestos building contamination] would appear to fall squarely within the ... definition of economic loss, but there is a determinative distinguishing factor. This is not a case where the claim is that the plaster cracked, crumbled or otherwise failed to perform satisfactorily as plaster. The claim here is that the plaster introduced a substance which is highly dangerous to humans into the building.

*Id.*, slip op. at 15–16 (citations omitted). Accordingly, the court ruled for plaintiff and denied defendant's motion for summary judgment.

This view was also supported by the state court in *Independent School District 709 v. Air–O–Therm Application Co.*, No. 155716 (Minn.Dist.Ct. May 20, 1987). *Independent School District 709* was identical on its facts to the instant case. The defendant in the instant case was also the defendant in *Independent School District 709*. The opinion noted:

---

**5.** This definition was cited approvingly by the Minnesota Supreme Court in *Minneapolis Fine Arts*, 354 N.W.2d at 821. In *Minneapolis Fine Arts*, the court held that a building owner could not recover in strict liability for damage to a brick facing that was disintegrating. The brick facing did not serve the protective purpose for which it was designed. The court found that contract remedies were the appropriate measure of damage. *Minneapolis Fine Arts*, 354 N.W.2d at 821.

The court disagrees with the assertion that this is an economic loss case. The gist of the claim is not that the fireproofing failed to perform to the level expected, but rather that the hazardous asbestos products have contaminated Central and exposed persons to an unreasonable risk of injury.

*Id.,* slip op. at 7. Accordingly, the court denied defendant's motion for summary judgment. These Minnesota state and federal court decisions all concerned fact patterns which were basically identical to the instant case. They concluded that the plaintiffs were not claiming economic loss, and that tort remedies were available. The defendant has cited no cases applying Minnesota law on this fact pattern which have held that the *Superwood/Hapka* cases bar the use of tort theories.

This outcome has been supported by other jurisdictions as well. In *Town of Hooksett School District v. W.R. Grace Co.,* 617 F.Supp. 126, 131 (D.N.H.1984), the court found defendant Grace liable in tort for damage caused by asbestos laden fireproofing material. The court specially noted, "[t]hat the measure of the Plaintiff's damages is economic does not transform the nature of his injury into a strictly economic loss." *Id.*

A key factor for the courts analyzing asbestos building cases is that the damage claimed in such cases is not related to the failure of the product to perform, but to the alleged tendency of the product to release hazardous material into the environment. *See City of Manchester v. National Gypsum Co.,* 637 F.Supp. 646, 641 (D.R.I. 1986); *School District of Independence v. U.S. Gypsum,* 750 S.W.2d 442, 456 (Mo.Ct. App.1988). *City of Greenville v. W.R. Grace & Co.,* 827 F.2d 975 (4th Cir.1987).[6] The Court finds the totality of the Minnesota asbestos building cases to be persuasive authority that tort remedies should be available to the plaintiff in this case.

Defendant cites one asbestos case reaching a different conclusion than the cases discussed above. *Banc One Building Management Corp. v. W.R. Grace & Co.— Conn.,* 461 N.W.2d 448 (Wisc.Ct.App.1990). In *Banc One,* the Wisconsin appellate court held that an owner of an office building contaminated with asbestos could not recover in tort. The court concluded that the claim was barred by the economic loss rule, so recovery could only be in contract. *Banc One,* slip op. at 7. The court based this result on Wisconsin state precedent and on *East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). There are two reasons, however, why *Banc One* is of dubious precedential value. First, the *Banc One* court never engaged in an analysis of why the claim was for economic loss. Second, *East River Steamship,* which the Wisconsin court cited as precedent, is not helpful to defendant's claim. In *East River Steamship,* the defendant manufactured turbines which were installed in plaintiff's ship and were extensively damaged after they were put into service. When the plaintiff discovered that the turbines were defective, the plaintiff sued under a theory of strict liability, solely for the damage to the turbines. The Supreme Court concluded that recovery should not be available in tort, because claims for economic loss in commercial transactions were best limited to contract law.[7] *East River Steamship,* 476 U.S. at 873, 106 S.Ct. at 2303. Unlike the instant case, the damage claimed in *East River Steamship* was for the failure of a product to meet the general purpose for which it was purchased. *East River Steamship,* therefore, is not helpful to the defendant's argument. The Court finds *Banc One* to be of little precedential value because it relies on *East River Steamship.*

■ A review of the claims compels the view that this is not a case of economic

---

6. In *City of Greenville,* the city government sued W.R. Grace for asbestos building contamination of the city hall. The court found that tort remedies were available because the type of risk involved in asbestos contamination was not a

type normally allocated by contract. *City of Greenville,* 827 F.2d at 978.

7. The Supreme Court heard *East River Steamship* in the Court's jurisdiction in admiralty.

loss. Plaintiff is not claiming that the asbestos failed in its primary function. The plaintiff claims the asbestos was purchased as a fire retardant and was applied to the steel support beams in the school. The claim arises not from a failure of the asbestos to perform this basic function, but from the fact that the asbestos had contaminated the entire building with allegedly dangerous asbestos fibers. This definitionally is not "economic loss."

In summary, the Court concludes that negligence and strict liability based claims are available to the plaintiff and defendant's motion for summary judgment on this point will be denied.

### III. Whether Plaintiff's Claims for Breach of Implied Warranty of Merchantability Should be Dismissed

Defendant argues that plaintiff's complaint fails to state a claim for breach of implied warranty of merchantability, and that even if it does, summary judgment is appropriate. Minn.Stat. § 336.2–314 provides that to comply with an implied warranty of merchantability, goods to be merchantable must be at least such as:

(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, are of fair average quality within the description; and

(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label if any.

Defendant argues that the asbestos products purchased by plaintiff were merchantable because they "passed without objection" in the trade. In the absence of any contrary allegation by plaintiff, defendant argues that plaintiff fails to state a claim for breach of warranty of merchantability.

Plaintiff, however, correctly notes that passing without objection in the trade is only one measure of merchantability, and argues that where a good is alleged to be unreasonably dangerous, as is alleged of asbestos, such a good is clearly not "fit for the ordinary purposes for which such goods are used." It is on this basis that plaintiff rests its claim for breach of warranty of merchantability. According to plaintiff, the jury could reasonably find that a product which must be removed and replaced at a cost far exceeding the product's price due to the potential hazards it causes is neither merchantable nor fit for ordinary use. Defendant cites no cases striking merchantability claims regarding asbestos products. Plaintiff cites two cases sustaining such claims. See In re State and Regents Building Asbestos Cases, supra. Federal Reserve Bank, supra.

In Farr v. Armstrong Rubber Co., 288 Minn. 83, 179 N.W.2d 64 (1970), the Minnesota Supreme Court held that a product which is unreasonably dangerous is not fit for the ordinary purposes for which such articles are sold and used and if it proximately causes injury or damage to the ultimate purchaser the product breaches an implied warranty of merchantability. Id. 179 N.W.2d at 69.

■ The Court finds that plaintiff's complaint clearly states a claim for breach of implied warranty of merchantability under Farr v. Armstrong. Because there is a genuine issue of material fact concerning whether Monokote was defective and unreasonably dangerous and therefore unfit for the ordinary purpose for which it was sold, the Court will deny defendant's motion to dismiss plaintiff's claims for breach of implied warranty of merchantability.

### IV. Whether Plaintiff's Restitution Claim Should Be Dismissed

■ Plaintiff bases Count I of its complaint upon Restatement of Restitution § 115 (1937), otherwise known as the

"Emergency Assistance Doctrine." Restatement § 115 provides:

> A person who has performed the duty of another by supplying things or services, although acting without the other's knowledge or consent, is entitled to restitution from the other if:
>
> (a) he acted unofficiously and with intent to charge therefor; and
>
> (b) the things or services supplied were immediately necessary to satisfy the requirements of public decency, health, or safety.

In *State and Regents Building Asbestos Cases*, File Nos. 99081, 99082 (Dakota Cty. Dist.Ct. July 23, 1986), the court held that schools seeking recovery of costs of abating hazards allegedly caused by the presence of asbestos in their buildings stated a claim for restitution pursuant to Restatement § 115. According to the court, the emergency assistance doctrine of section 115 is grounded upon principles of unjust enrichment; such unjust enrichment, according to the court, "occurs when the cost of performing an act is shifted from the one whose duty it was to perform the act to another." Slip op. at 3. In holding that plaintiff had stated a claim for restitution, the court rejected the decision of the United States District Court for the Eastern District of Tennessee in *County of Anderson v. U.S. Gypsum*, No. CIV. 3–83–511 (E.D.Tenn.1984) which held that defendants had no duty to remove the asbestos which would trigger a claim of restitution. In rejecting this conclusion, the Minnesota district court found that the decision

> ignores the reality that the defendants may be under a duty to answer in damages—to pay for the consequences of the harm done unless the harm were removed, avoided or abated by them.... If the defendants are unwilling to remove the product (to restore the property to an "uninjured" nonhazardous condition) notwithstanding a duty to refrain from putting abroad in the marketplace a defective product, the plaintiffs may well find themselves confronted with an emergency (the impending exposure of an unaware public of users and occupants of the plaintiffs' facilities) to which the plaintiffs must respond. When, then, defendants have been given the opportunity to restore the properties and have refused to do so, all expenses to which the plaintiffs are put in the restoration confer on the defendants a dollar for dollar benefit for which they may be liable.

*State v. Regents*, slip op. at 4. With regard to the "emergency" element of section 115, the court held that the "lengthy timetable for pending and future abatement actions" does not indicate "an absence of immediate concern." *Id.* at 5. The court held:

> It is no more than evidence of the realities of limited funding being available to the plaintiffs, limited resources in the form of technically competent personnel to accomplish the abatement, and the ironic circumstance that in some instances abatement with its attendant disturbance of otherwise fixed and stable quantities of asbestos-containing products may result, at least temporarily, in a greater health hazard than doing little or nothing.

*Id.* According to the Minnesota district court, the unjust enrichment at issue consists of the "defendants' avoidance and consequent shifting to [plaintiffs] of the cost of performing the duty to prevent exposure of the public to asbestos-containing products that is primarily the obligation of the defendants." *Id.* A number of courts in Minnesota and nationwide have held that section 115 applies in an asbestos removal case. *See, Federal Reserve Bank v. Carey–Canada, Inc., et al.*, CIVIL 3–86–185, 1988 WL 220489 (D.Minn. Aug. 30, 1988) (adopting reasoning of the court in *State and Regents*); *Drayton Public School District 19 v. W.R. Grace & Co.*, 728 F.Supp. 1410 (D.N.D.1989) (asbestos removal action states restitution claim); *Adams–Arapahoe School District No. 28–J v. Celotex Corp.*, 637 F.Supp. 1207, 1209 (D.Colo.1986) (asbestos manufacturer had duty to abate hazard which established restitution claim); *City of New York v. Keene Corp.*, 132 Misc.2d 745, 505 N.Y. S.2d 782, *aff'd*, 129 A.D.2d 1019, 513 N.Y.

S.2d 1004 (N.Y.App.1987) (ultimate duty to remove hazardous asbestos lies with manufacturer.)[8] *But see, Independent School District No. 709 v. Air–O–Therm Application Co., et al.,* File No. 155716, slip op. at 9 (St. Louis Cty Dist.Ct. May 20, 1987) (rejecting restitution claim because "district has not identified the source of Grace's duty...."); *Board of Education of City of Chicago v. A, C & S, Inc.,* 131 Ill.2d 428, 137 Ill.Dec. 635, 651–52, 546 N.E.2d 580, 596–97 (1989) (no restitution claim for asbestos removal in absence of independent duty on defendant); *Town of Hooksett School District v. W.R. Grace & Co.,* 617 F.Supp. 126, 134 (D.N.H.1984) (same); *Corporation of Mercer University v. National Gypsum Co.,* 1986 WL 12447 (M.D.Ga.1986) (dismissing restitution claim because plaintiff failed to show that removal of asbestos was "immediately necessary").

The Court agrees with the reasoning in the *State and Regents Building* case discussed above. Based on plaintiff's allegations Grace has been unjustly enriched to the extent the plaintiff is required to abate a hazard created by defendant. Further, the Court finds that the hazard posed by the presence of the asbestos constitutes no less of an "emergency" because abatement will require an extended amount of time, and has not yet been completed. Accordingly, the Court finds that plaintiff has stated a valid restitution claim and defendant's motion to dismiss this claim will be denied.

**V. *Whether Plaintiff's Claim Pursuant to the Minnesota Unlawful Trade Practices Act Should be Dismissed***

■ Defendant argues that plaintiff has failed to state a claim under the Minnesota Unlawful Trade Practices Act, Minn. Stat. § 325D.13, which provides in pertinent part:

No person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise.

Defendant argues that plaintiff's claims do not fall within the statute, and, further, that the statute is only intended to apply to "consumers," not to a public body. Defendant's Memorandum in Support of Motion to Dismiss at 47.

In *State and Regents Building Asbestos Cases,* the court noted that the statute afforded a remedy to a "person" injured by a violation, and that under Minn.Stat. § 645.44 the term "person" as used in Minnesota Statutes "may extend and be applied to bodies politic...." The court concluded that a body politic such as the plaintiffs were "persons" afforded a remedy for violation of the act. *State and Regents Building Asbestos Cases,* File Nos. 99081, 99082 (Dakota Cty.Dist.Ct. July 23, 1986) at 8. The court further held that plaintiffs' allegations were "plainly sufficient" to state a claim that Grace misled "as to the quality [and] ingredients of its merchandise." *Id.* Here, as in *State and Regents,* plaintiff has alleged that defendant had available to it data which clearly indicated the hazards of asbestos prior to installation of defendant's product in plaintiff's building and that defendant represented that the asbestos products specified and installed in plaintiff's buildings were suitable for such use when, in fact, they knew or should have known they were not. The Court agrees with the court in *State and Regents* that a body politic such as Independent School District No. 197 may bring such a claim under the Minnesota Unlawful Trade Practices Act.

**VI. *Whether Plaintiff's Claims are Preempted***

■ Defendant argues that Congress has evidenced an intent to occupy the field of asbestos regulation through a variety of

---

**8.** The court in *City of New York v. Keene Corp.* relied in part upon findings of the United States Attorney General contained in the Attorney General's Asbestos Liability Report to the Congress, which concluded that in cases involving asbes-

tos abatement in public schools, "restitution appears to be the most desirable remedy ... because it most closely fits the problem...." *Id.* 505 N.Y.S.2d at 787.

acts including the Occupational Safety and Health Act, the Asbestos Hazard Emergency Response Act, regulations promulgated by the Environmental Protection Agency and numerous other asbestos-related statutes and regulations. Defendant argues that the federal government has established fiber content limits regarding the number of permissible asbestos fibers per cubic centimeters of air, has comprehensively regulated the necessity for using personal protective equipment when handling hazardous materials, established requirements for schools to inspect and report the presence of asbestos-containing materials in their buildings, and has set the standards for controlling the release of asbestos fibers during renovation or demolition. Based on these regulations, defendant argues that the federal government has so occupied the field that the Court should find that Congress has impliedly preempted state law claims such as those of plaintiff.

In *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984), the Court held:

> If Congress evidences an intent to occupy a given field, any state law falling within that field is preempted.... If Congress has not entirely displaced state regulation over the matter in question, state law is still preempted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law, or where state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.

*Id.* at 248, 104 S.Ct. at 621 (citations omitted). In the absence of express preemption, however, there is a basic assumption that Congress did not intend to displace state law. *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981). As the Court held in *Hillsborough County, Florida v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985), in concluding that federal regulations governing collection of blood plasma do not preempt local county ordinances:

> we are even more reluctant to infer preemption from the comprehensiveness of regulations than from the comprehensiveness of statutes. As a result of their specialized functions, agencies normally deal with problems in far more detail than does Congress. To infer preemption whenever an agency deals with a problem comprehensively is virtually tantamount to saying that whenever a federal agency decides to step into a field, its regulations will be exclusive. Such a rule, of course, would be inconsistent with the federal-state balance embodied in our supremacy clause jurisprudence.

471 U.S. at 717, 105 S.Ct. at 2377.

In *Silkwood*, the Supreme Court held that an award of punitive damages in a tort action against the manufacturer of plutonium products was not preempted despite the fact that the federal government had extensively regulated the field of nuclear safety. The Court wrote:

> No doubt there is tension between the conclusion that safety regulation is the exclusive concern of the federal law and the conclusion that a state may nevertheless award damages based on its own law of liability.... Congress intended to stand by both concepts and to tolerate whatever tension there was between them. We can do no less. It may be that the award of damages based on the state law of negligence or strict liability is regulatory in the sense that a nuclear plant will be threatened with damages liability if it does not conform to state standards, but that regulatory consequence was something Congress was quite willing to accept.

*Silkwood*, 464 U.S. at 256, 104 S.Ct. at 625. Here, defendant cites nothing to suggest that Congress intended to abolish state law remedies for injury caused by the presence of asbestos in school buildings. While imposition of state tort law standards may in some sense be regulatory, there is no indication that compliance with both federal regulations and state tort standards is impossible.

The only evidence of Congress' intent regarding state regulation cited by defen-

dant is a section of the Occupational Safety and Health Act which provides:

> Nothing in this act shall prevent any state agency or court from asserting jurisdiction under state law over any occupational safety or health issue with respect to which no standard is in effect under [29 U.S.C. § 655].

29 U.S.C. § 667(a). Defendant argues that since OSHA regulations set a fiber content limit of up to 2.0 fibers per cubic centimeter of air in 1970 to 1971, reduced to .2 fibers per cubic centimeter of air in 1989, plaintiff's state law claims are necessarily preempted by section 667(a). Defendant, however, cites no cases finding that an asbestos-removal case is preempted by this or any other federal statute or regulatory scheme. Moreover, as plaintiff notes, OSHA is aimed primarily at employers, not at manufacturers of products used by employers. Defendant has failed to show how plaintiff's claim for reimbursement of the costs of removing the asbestos from its building, removal which plaintiff claims is required by federal mandate as a result of the renovation of the building, conflicts with any federal statute or regulation. In the absence of any evidence that Congress intended to preempt such an action, defendant's motion to dismiss plaintiff's complaint on the grounds of preemption will be denied.

CONCLUSION

Based on the foregoing, and upon all the files, records and proceedings herein,

IT IS ORDERED that:

1. defendant's motion for summary judgment on the issue of whether plaintiff's claims are barred by Minn.Stat. § 541.051 is denied;

2. defendant's motion to certify issues of state law to the Minnesota Supreme Court is denied;

3. defendant's motion to dismiss plaintiff's tort claims is denied;

4. defendant's motion to dismiss or for summary judgment on plaintiff's claims for breach of implied warranty of merchantability is denied;

5. defendant's motion to dismiss plaintiff's claim of breach of implied warranty of fitness for a particular purpose is granted;

6. defendant's motion to dismiss plaintiff's claim for restitution is denied;

7. defendant's motion to dismiss or for summary judgment on plaintiff's claims pursuant to the Minnesota Unfair Trade Practices Act is denied; and

8. defendant's motion to dismiss on the grounds of federal preemption is denied.