**DRAYTON PUBLIC SCHOOL DISTRICT NO. 19, Plaintiff,**

**v.**

**W.R. GRACE & CO., Defendant.**

**Civ. No. A2–88–184.**

United States District Court, D. North Dakota, Northeastern Division.

Dec. 19, 1989.

Steven C. Lian, Minot, N.D., Jon M. Arnston, Fargo, N.D., Daniel A. Speights and J. Martin Harvey, Jr., Hampton, S.C., for plaintiff.

Steven A. Storslee, Bismarck, N.D., for defendant.

## ORDER

VAN SICKLE, District Judge.

## INTRODUCTION

This action is in federal court due to defendant W.R. Grace Co.'s removal of it from state court where it was filed. Such removal was conducted pursuant to 28 U.S.C. § 1441 (1989). This is an action in negligence, breach of express and implied warranty, strict liability, fraud and misrepresentation, nuisance, indemnity, restitution, and medical monitoring. The action is brought by Drayton Public School District No. 19, the plaintiff. Drayton seeks to recover the costs for the assessment, management, removal and replacement of W.R. Grace's asbestos-containing Zonolite Acoustic ceiling plaster.

On August 30, 1989 W.R. Grace filed a motion for summary judgment with this Court asking "for summary judgment, or, in the alternative, partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure...." On August 31, 1989 Drayton filed its own motion for partial summary judgment. This motion was granted by order of Magistrate Klein on September 22, 1989. Briefs, copies of learned articles, cases, and letters pleading their respective cases were submitted by both sides.

## FACTS

In 1967 and 1968, Drayton installed Zonolite Acoustic in its Drayton Public School. Zonolite is a form of acoustic ceiling plaster manufactured by W.R. Grace. Zonolite contains asbestos. By 1979, Drayton officials became concerned about the possibility of asbestos in their school. Drayton had tests run on some of the ceiling plaster in the school in 1979. The results of that test have been lost and are thus unknown. In 1980 Drayton had additional tests run to ascertain whether hazardous levels of asbestos were present. These tests were negative. The tests did, however, show that "trace elements" of asbestos could exist in the school.

The school board, the Education Association, and the principal of Drayton were unaware of dangerous asbestos levels until further tests taken in 1983 and 1984. These tests identified a high level of asbestos within the Drayton school. At this time, Drayton officials became concerned, starting the chain of events culminating in this lawsuit. Grace claims that the statute of limitations precludes this action.

## ISSUES

I. Whether N.D.C.C. § 28–01–16 bars Drayton's claims.

II. Whether Drayton's strict liability and negligence theories seek recovery for economic loss.

III. Whether Drayton's action for breach of implied and express warranties should be dismissed.

IV. Whether Drayton's charges of fraud should be dismissed.

V. Whether Drayton's claim for restitution should be dismissed.

## DISCUSSION

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. *Osborn v. E.F. Hutton & Co., Inc.*, 853 F.2d 616, 618 (8th Cir.1988) (citing Fed.R.Civ.P. 56(c)). In or-

der to prevent the entry of a summary judgment, the non-moving party must make a sufficient showing on every essential element of its case on which it bears the burden of proof. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). In determining whether a motion for summary judgment should be granted, the evidence must be viewed in the light most favorable to the non-moving party. *Id.* at 618–19.

I. *Whether N.D.C.C. § 28–01–16 bars Drayton's claims.*

■ W.R. Grace claims that the six-year statute of limitations contained in N.D.C.C. § 28–01–16 started to run in 1968 when the Zonolite was installed in the Drayton school. This Court was faced with the same problem several months ago in *Hebron Pub. School Dist. No. 13 of Morton County v. United States Gypsum Co.*, Civil Case No. A1–86–184, 1989 WL 168985 (D.N.D. June 21, 1989). At that time, this Court held that cases involving latent-product defects, such as asbestos-containing materials, are governed by the "discovery rule" which modifies N.D.C.C. § 28–01–16. The discovery rule tolls the statute of limitations until the time a plaintiff actually learned, or through the exercise of reasonable diligence should have learned, of his or her cause of action against the defendant. Comment, *Recovery for Risk Comes of Age: Asbestos in Schools and the Duty to Abate a Latent Environmental Hazard*, 83 Nw. U.L.L.Rev. 512, 517 (1989).

As in the *Hebron* case, the discovery rule applies in this case. N.D.C.C. § 28–01–16 states that actions must be commenced within six years after the cause of action has accrued or they will be barred. The question in *Hebron* was whether claims of school district's are barred by the statute's definition of accrual if brought more than six years after the installation of asbestos. As this Court observed then,

No definition of accrual is given in the text of § 28–01–16(1). However, the North Dakota Supreme Court has indicated that accrual under subsection (1) in a reformation action is 'at the time the facts which constitute the mistake and form the basis for reformation have been, or in the exercise of reasonable diligence should have been discovered.' *Wehner v. Schroeder*, 335 N.W.2d 563 (N.D.1983). *Wehner* demonstrates the Supreme Court's definition for accrual when dealing with cases where latent defects for mistakes form the basis for a cause of action under the limitations period of § 28–01–16(1).

The Court concludes that the accrual of [plaintiff's] claims under § 28–01–16(1) was when [plaintiff] discovered, or with reasonalble diligence should have discovered, the facts giving rise to the claims. That date was ... when test results indicated asbestos in the ceilings of [the] school buildings. [Plaintiff] then filed its claims ... meeting the six-year statute of limitations.

The question of whether the statute of limitations applies to W.R. Grace then becomes one of whether or not Drayton had knowledge of the asbestos in its school.

Drayton claims the earliest it ever knew the ceiling contained dangerous levels of asbestos was in 1983. While this may have been sufficient to start the statute of limitations running, this action was filed on September 16, 1988 within six years of the discovery of this information. There is thus a serious dispute of fact in this case, one that cannot be decided by a motion for summary judgment. What knowledge Drayton had, and when it had it, is the key to this case. The competence of the first tests, the grounds Drayton had for believing them, and the need for Drayton to diligently pursue the contamination of its school are issues for trial. W.R. Grace's motion for summary judgment is accordingly denied.

II. *Whether Drayton's strict liability and negligence theories seek recovery for economic loss.*

■ W.R. Grace claims that Drayton's strict liability and negligence causes of action should be dismissed. W.R. Grace contends that North Dakota does not permit

recovery in tort for economic loss. W.R. Grace believes that the type of product removal in this case is the type of economic loss that North Dakota does not allow to be recovered in tort.

The *Hebron* case presented this Court with the same problem. *See Hebron Pub. School Dist. No. 13 of Morton County v. United States Gypsum Co.*, 690 F.Supp. 866 (D.N.D.1988). In *Hebron*, this Court joined many other courts around the nation in deciding that asbestos property damage claims for negligence and strict liability are not for economic loss. As noted in *Hebron*,

> [r]egarding damage to property, [defendants] argue that the asbestos, even if threatening to the health of those who occupy [the] building, has done no physical harm to the structure of the building itself. [Plaintiff's] loss, if any is therefore an 'economic loss' which is not recoverable in tort. This is an interesting argument, and one which has, on its face, some persuasive force. However, this Court's own analysis of the law and facts is in accord with the dominant line of cases *rejecting* this position. Without reiterating the lengthy deliberations set out in the case law, the analysis is in brief as follows. The asbestos in this case is apparently found in an acoustical ceiling coating. If this coating has failed in its purpose—if it had fallen off, or had failed to muffle reverberations—that would have given rise to an action sounding in contract for economic loss. However it appears that the coating functioned satisfactorily in its attendant role except that it released harmful asbestos fibers into the building, poisoning it and rendering it unfit for use. This is damage to property in which a tort claim can be founded; the physical structure was unharmed but it was damaged in its utility, and its function as a building. This Court finds that [plaintiff] has pleaded sufficient facts on which to base a claim sounding in tort and so must deny the motion to dismiss. . . .

*Id.* at 870.

In the present case, Drayton also claims that the school's function was affected by reason of the asbestos in its ceiling plaster. Drayton claims that Zonolite made the building hazardous to the students and teachers who must work in and around it. That asbestos can be dangerous is now common knowledge. *See generally*, Paul Brodeur, *Outrageous Misconduct: The Asbestos Industry on Trial* (1985). This fear of the dangers of asbestos was precisely the reason Drayton had the Zonolite removed. Other courts have agreed that such an action could be brought in tort without violating the economic loss rule of *Hagert v. Hatton Commodities, Inc.*, 350 N.W.2d 591, 595 (N.D.1984). *See City of Greenville v. W.R. Grace & Co.*, 640 F.Supp. 559 (D.S.C.1986). Accordingly, W.R. Grace's motion for summary judgment is denied.

### III. *Whether Drayton's action for breach of implied and expressed warranty should be dismissed.*

■ W.R. Grace claims that Drayton's claims for breach of express and implied warranties should be dismissed. W.R. Grace contends that in North Dakota, "express warranties, implied warranties of merchantability, and fitness for a particular purpose" are granted by § 2–725 of the Uniform Commercial Code (N.D.C.C. § 41–02–104). W.R. Grace wants § 2–725 to control because it contains a four year statute of limitations. Thus even if Drayton can convince a jury that it did not discover asbestos until 1984, the statute of limitations will preclude this action. Drayton opposes this interpretation.

When the North Dakota legislature enacted the U.C.C., it specifically stated that "unless displaced by the particular provisions of this title the principles of law and equity shall supplement its provisions." N.D.C.C. § 41–01–03. Drayton wants this Court to find that the warranty provisions of the U.C.C. do not invalidate the common law warranty theories where damages have occurred to property. Since this Court has already held that Drayton has six years from the date of discovery of an injury to bring action, it would thus be allowed to proceed with its warranty claims.

The U.C.C. generally applies to personal injury and property damage caused by a breach of warranty. *See* U.C.C. §§ 2–715(2)(b), 2–719(3), 2–318, Alt. A and B. Despite this, most courts and commentators have concluded that neither the drafters of the U.C.C., nor the legislators that enacted it, intended the U.C.C. to preempt the developing law of strict products liability. *See e.g., Phipps v. General Motors Corp.*, 278 Md. 337, 349–50, 363 A.2d 955, 961–62 (1976); Speidel, *Warranty Theory, Economic Loss, and the Privity Requirement: Once More Into the Void*, 67 B.U.L. Rev. 9 (1987); Wade, *Tort Liability for Products Causing Physical Injury and Article 2 of the U.C.C.*, 48 Mo.L.Rev. 1 (1983). The North Dakota Supreme Court has ruled that provisions of the common law remain in effect after the passage of the U.C.C. in *Willow City Farmer's Elevator v. Vogel, Vogel, Brantner & Kelly*, 268 N.W.2d 762 (N.D.1978) (common law of assignment still in effect) and *Farmer's Coop. Ass'n of Churchs Ferry v. Cole*, 239 N.W.2d 808 (N.D.1976) (common law priciples of estoppel supplement U.C.C.). The warranty provisions of the U.C.C. therefore do not invalidate the common law warranty theories where damages have occurred to property. The U.C.C. and its four-year statute of limitations accordingly do not govern this case. W.R. Grace's motion is therefore denied.

## IV. *Whether Drayton's charges of fraud should be dismissed.*

Drayton has also asserted a fraudulent concealment/civil conspiracy cause of action. Such a cause of action has been accepted with some favor in recent litigation against the cigarette and asbestos industries. *See e.g., Cipollone v. Liggett Group, Inc.*, 683 F.Supp. 1487 (D.N.J.1988); *Marshall v. Celotex Corp.*, 652 F.Supp. 1581 (E.D.Mich.1987). North Dakota law states that where a party to a transaction conceals some material fact within his or her own knowledge for which there is a duty to disclose, actual fraud has occurred. *See Diemert v. Johnson*, 299 N.W.2d 546 (N.D.1980) (citing N.D.C.C. § 9–10–023). Fraud can accordingly be based solely upon a negligent or intentional failure to disclose material facts.

At trial, Drayton will attempt to demonstrate that W.R. Grace had actual knowledge that asbestos was a carcinogen. Drayton will try to show that W.R. Grace knew Zonolite would release fibers. Drayton claims that despite this knowledge, W.R. Grace failed to disclose these facts and actively promoted Zonolite for use in Drayton's schools. Drayton claims that had it known that potential health hazards and property contamination would arise, it would not have used Zonolite in its school.

There is evidence that suggests that for over forty years the asbestos industry kept the true health risks of its product from the public. *See* Comment, *Recovery for Risk Comes of Age: Asbestos in Schools*, 83 Nw.U.L.Rev. 512 (1988), and cases cited therein. Drayton claims that but for the suppression of information concerning the dangers of asbestos, it would not have had to meet the great expense of removing the asbestos from its school. North Dakota long ago recognized the principle of civil conspiracy. *See e.g., Wedwik v. Russell–Miller Milling*, 64 N.D. 690, 256 N.W. 107, 108–09 (1934). This Court believes that a cause of action asserting fraudulent concealment and civil conspiracy has raised a question of fact. Defendant's motion for summary judgment is accordingly denied.

## V. *Whether Drayton's claim for restitution should be dismissed.*

In its complaint, Drayton has asked for restitution damages. Drayton claims that the abatement of the asbestos containing materials was "immediately necessary to satisfy the requirements of public health and safety." Drayton had to remove this asbestos, it alleges, because W.R. Grace would not. Such an abatement, Drayton asserts, was required to remedy a "public emergency." *See Restatement of Restitutions*, § 115 (1937). The *Restatement* provides that,

A person who has performed the duty of another by supplying things or services, although acting without the other's

knowledge or consent, is entitled to restitution from the other if:

    (a) he acted unofficiously and with intent to charge therefore, and

    (b) the things or services supplied were immediately necessary to satisfy the requirements of public decency, health or safety.

Drayton believes that such language entitles it to attempt to prove restitution damages.

The *Restatement*, of course, is not legal authority. It has neither the weight or precendence of statutory law. *Hebron Pub. School Dist. No. 13 of Morton County v. United States Gypsum Co.*, 690 F.Supp. 866, 868–69 (D.N.D.1988). The North Dakota Supreme Court has never stated whether it accepts § 115 as good law. This Court has, however, resolved this question as it believes the North Dakota Supreme Court would, and accepted § 115 as applicable in North Dakota. *Id.*

    This Court has read with interest W.R. Grace's brief where it states "[I]n *Hebron*, Judge Van Sickle dismissed the restitution claim at the close of … the case … conclud[ing] that there was no 'public emergency.'" This would indeed be helpful to W.R. Grace, but, unfortunately, this is *not* the holding in *Hebron*. Instead, this Court ordered the plaintiff to enter a more definite statement of its first cause of action. *Id.* at 869–70. This Court will attempt to simplify the elements of a cause of action under § 115. In order to maintain a claim under § 115, a plaintiff must plead three things:

    1) That the party whose duty it was to act refused to do so through explicit or implicit means; and

    2) There was a need to act immediately to protect the public health; and

    3) That the party who failed to act had a duty to do so.

*Id.* at 869. As in *Hebron*, "this Court cannot determine that [Drayton] will be unable to prove facts meeting the elements of § 115." *See id.* Since Drayton has pled these three factors, this Court cannot grant W.R. Grace's request for summary judgment.

## CONCLUSION

After considering W.R. Grace's motion for summary judgment, this Court finds many factual determinations which must be made by the finder of fact. Where such questions of fact exist, summary judgment is inappropriate.

IT IS THEREFORE ORDERED:

    1) THAT W.R. GRACE & CO.'S MOTION ASKING "FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT" AS APPLIED TO THE ISSUE OF THE STATUTE OF LIMITATIONS IS DENIED.

    2) THAT W.R. GRACE & CO.'S MOTION FOR SUMMARY JUDGMENT ON THE STRICT LIABILITY, NEGLIGENCE, BREACH OF IMPLIED AND EXPRESS WARRANTIES, AND FRAUD THEORIES OF RECOVERY IS DENIED.

    3) THAT W.R. GRACE & CO.'S MOTION FOR SUMMARY JUDGMENT ON DRAYTON'S INDEMNITY AND MEDICAL MONITORING CAUSES OF ACTION IS MOOT BECAUSE OF DRAYTON'S WITHDRAWAL OF THOSE CLAIMS.

THE CLERK SHALL ENTER JUDGMENT ACCORDINGLY.