70 F.Supp.2d 1008 (1999)
CITY OF ST. LOUIS, et al., Plaintiffs,
v.
AMERICAN TOBACCO COMPANY, INC., et al., Defendants.
No. 4:98CV02087 ERW.
United States District Court, E.D. Missouri, Eastern Division.
July 2, 1999.
*1009 *1010 Kenneth C. Brostron, Terrance J. Good, Vice-President, Carolyn M. Kopsky, Margaret M. Mooney, Katherine M. Barrett, Lashly and Baer, P.C., St. Louis, MO for plaintiffs.
Frank N. Gundlach, Armstrong Teasdale, LLP, St. Louis, MO, Andrew R. McGaan, Ram Padmanabhan, Kirkland and Ellis, Chicago, IL, for American Tobacco Company, Inc., Batus Holdings, Inc., Brown and Williamson Tobacco Corp.
Michael B. Minton, J. William Newbold, III, Bruce D. Ryder, Thompson Coburn, St. Louis, MO, Mark G. Cunha, John D. Roesser, Jerry Coleman, Simpson and Thacher, New York City, for B.A.T. Industries P.L.C., British American Tobacco Holdings, Ltd.
Arthur L. Smith, Jeffrey W. Coverdell, Husch and Eppenberger, St. Louis, MO, for British American Tobacco Company, Ltd.
James A. Durbin, James H. McLarney, Karen Zambri Schutter, Swanson and Midgley, Kansas City, MO, Michael M. Fay, Aaron H. Marks, Nancy E. Straub, Kasowitz and Benson, New York City, for Liggett & Myers, Inc., Liggett Group, Inc., Brooke Group, Ltd.
Michael B. Minton, J. William Newbold, III, Bruce D. Ryder, Thompson Coburn, St. Louis, MO, Gene Voights, Richard L. Gray, Shook and Hardy, Kansas City, MO, for Lorillard Tobacco Co., Lorillard Corp., Loews Corp.
Alan C. Kohn, Lisa A. Pake, Kohn and Shands, St. Louis, MO, Dan K. Webb, David B. Love, Thomas J. Frederick, Winston and Strawn, Chicago, IL, for Philip Morris Incorporated, Philip Morris Companies, Inc.
Michael B. Minton, J. William Newbold, III, Bruce D. Ryder, Thompson Coburn, St. Louis, MO, Robert F. McDermott, Jr., Jones and Day, Washington, DC, Thomas P. McNulty, Thomas F. Gardner, Jones and Day, Chicago, IL, for R.J. Reynolds Tobacco Company.
Charles L. Joley, Donovan and Rose, Belleville, IL, for United States Tobacco Co.
Kenneth J. Mallin, Mark W. Eggert, Bryan Cave LLP, St. Louis, MO, Harry Zirlin, Steven Klugman, Debevoise and Plimpton, New York City, for The Council For Tobacco Research U.S.A., Inc.
Larry E. Hepler, Senior Partner, Daniel W. Farroll, Amy Collignon Gunn, Burroughs and Hepler, Edwardsville, IL, for The Tobacco Institute, Inc.
Richard E. Boyle, Gundlach and Lee, St. Louis, MO, Thomas R. Peters, Gundlach and Lee, Belleville, IL, for Smokeless Tobacco Council, Inc.
Michael A. Vitale, Herzog and Crebs, St. Louis, MO, Bruce M. Ginsberg, Davis and Gilbert, New York City, for Hill and Knowlton, Inc.
Michael B. Minton, J. William Newbold, III, Bruce D. Ryder, Thompson Coburn, St. Louis, MO, for Mound City Industries, Inc., Liberty Candy & Tobacco, Co., Westerheide Tobacco & Cigar Co., U-Gas, Inc. D.C., Inc., Jimco, Inc., Marilyn R. Hays.

MEMORANDUM AND ORDER
WEBBER, District Judge.
This matter is before the Court upon plaintiffs' Motion to Remand [Document # 23].

I. STATEMENT OF RELEVANT FACTS.

On November 16, 1998, the plaintiffs filed a petition against defendants in the Twenty-Second Judicial Circuit Court of the City of St. Louis, State of Missouri, Cause No. 982-9656, styled City of St. Louis, et al. v. American Tobacco Company, Inc., et al. (hereinafter referred to as the "state action"). The plaintiffs in the action include one municipality and a number of hospitals and medical care entities. The defendants are cigarette manufacturers, distributors, and other similar entities. *1011 In this action, plaintiffs allege that defendants, through conduct including, but not limited to, the manufacture, advertising, sale and promotion of tobacco products in the state of Missouri, have caused damage the plaintiffs. Plaintiffs also allege that other defendants, through conduct including, but not limited to, the sale, distribution, promotion and advertising of tobacco products in Missouri, have damaged the plaintiffs. This latter group of defendants (hereinafter referred to as the "Distributor Defendants"), are all citizens of the State of Missouri. Plaintiffs allege that they have suffered damage, because the defendants fraudulently and falsely promoted, advertised, and sold highly addictive tobacco products that cause lung cancer, throat cancer, emphysema, heart disease, and other diseases. Plaintiffs claim that in discharging their governmental public benefit functions, they were required to provide unreimbursed healthcare to Medicaid and medically indigent patients for these tobacco related illnesses caused by defendants' addictive tobacco products. For this reason, plaintiffs bring a variety of claims to recover these damages from the defendants, including a claim in Count VII for public nuisance, in Counts VIII and IX for products liability based upon strict liability, in Count X for products liability based upon negligence, and in Count XI a cause of action based upon the Restatement of Restitution § 115.
On December 17, 1998, defendants removed the plaintiffs' action to this Court, alleging that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Defendants allege that diversity of jurisdiction exists in this case, because plaintiffs have fraudulently joined the Distributor Defendants in this cause of action for the purpose of insuring state court jurisdiction. On January 29, 1999, plaintiffs filed the instant motion to remand this action to the Missouri court system, contending that this Court lacks subject matter jurisdiction, because they have established their causes of action against the Distributor Defendants.

II DISCUSSION.

Defendants contend that this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds $75,000 and that the true parties in this case are citizens of different states. Understanding that at least some of the named defendants, the Distributor Defendants, are citizens of Missouri, defendants argue that plaintiffs have fraudulently joined the Distributor Defendants for the purpose of defeating federal jurisdiction. Therefore, the Court must decide whether plaintiffs' causes of action against the Distributor Defendants are valid claims or merely a subterfuge to defeat federal jurisdiction.

A. APPLICABLE LEGAL STANDARDS.

Pursuant to 28 U.S.C. § 1332, federal district courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum of value of $75,000" and the matter is between "citizens of different States." 28 U.S.C. § 1332(a)(1). In cases in which the removing party argues that a court has federal jurisdiction due to the plaintiff's fraudulent joinder of non-diverse defendants, the removing party bears the burden of demonstrating fraudulent joinder. Monroe v. Consolidated Freightways, Inc., 654 F.Supp. 661, 663 (E.D.Mo.1987) (citation omitted). In order to meet this burden, the removing party must show one of the following: (1) there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or (2) there has been outright fraud in the plaintiff's pleading of jurisdictional facts. Parnas v. General Motors Corp., 879 F.Supp. 91, 92 (E.D.Mo.1995)(citing Monroe, 654 F.Supp. at 662-63). In this case, defendants have only attempted to meet their burden of proving the first of these two options. In determining whether the defendants in *1012 this matter have sustained this burden, this Court must also be mindful of the fact that removal statutes are strictly construed. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). Placing this heavy burden on the defendants is a necessary corollary of the "considerable deference" that federal courts generally give "to a plaintiff's choice of forum." Terra International, Inc. v. Mississippi Chemical Corp., 119 F.3d 688, 695 (8th Cir.1997).

B. THE REMOTENESS DOCTRINE DOES NOT CLEARLY PRECLUDE PLAINTIFFS' CLAIMS.

Defendants first argue that plaintiffs' claims against the Distributor Defendants are barred by the remoteness doctrine. In making their arguments pursuant to this doctrine, defendants note that plaintiffs are attempting to recover damages equivalent to the resources and funds expended by plaintiffs in treating individuals suffering from smoking-related illnesses. Defendants argue that this claim made by plaintiffs for indirect and derivative injuries runs counter to the "bedrock principle" that a plaintiff generally stands at too remote a distance to recover for harms against a third person.
Understanding this argument advanced by defendants, the Court does not find that plaintiffs' claims are clearly barred by the remoteness doctrine under Missouri law. The Court agrees with defendants that several courts have dismissed similar or identical claims like those advanced by the plaintiffs in this case based upon the "bedrock principle" that a plaintiff who complains of harm caused by misfortunes suffered by a third party at the hands of a defendant "generally" stands at too remote a distance to recover. However, the Court does not find the opinions of the state Supreme Courts cited by defendants particularly persuasive when the Missouri state courts have not thoroughly considered a claim like the instant matter under Missouri law. Similarly, the Court does not find defendants' citation of federal court opinions from other jurisdictions particularly helpful when those courts did not consider Missouri law. In addition, the Court does not find defendants' citation of other federal court decisions particularly helpful, because those courts are in some disharmony on the issue of whether the remoteness principle bars a plaintiff's common law claims. See generally Steamfitters Local Union 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d 912(3d Cir.1999)(rejecting union health and welfare fund suits against tobacco companies on remoteness grounds); Arkansas Blue Cross and Blue Shield v. Philip Morris, Inc., 47 F.Supp.2d 936, 937-38 (N.D.Ill.1999)(finding that plaintiffs had stated a cause of action notwithstanding defendants' arguments that the claims were barred by the remoteness doctrine); Carpenters and Joiners Welfare Fund v. Philip Morris Inc., No. 98-515 (PAM/JGL) (D.Minn. Apr. 29, 1999)(rejecting plaintiffs' RICO and federal antitrust claims in which plaintiffs' alleged that they were required to pay smoking-related medical expenses on remoteness grounds); Utah Laborers' Health & Welfare Trust Fund v. Philip Morris Incorporated, 2:98CV403B (D.Utah March, 1999)(finding that plaintiffs' claims are not too remote and that a jury could find that the plaintiffs' injuries were foreseeable and substantially caused by the behavior of the defendants); Seafarers Welfare Plan v. Philip Morris, 27 F.Supp.2d 623 (D.Md.1998)(rejecting RICO and state common law claims on remoteness grounds).[1] In fact, one court has even *1013 gone as far as to state that there is simply no authority standing for the proposition that "the common law embraces a rule which bars all claims for `indirect' injuries." Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc., 36 F.Supp.2d 560, 579 (E.D.N.Y.1999). Because Missouri courts would likely look to decisions made by courts in other state and federal courts to decide whether the remoteness doctrine bars the plaintiffs' claims and the decisions in those other courts are not in harmony, the Court is unable to conclude that there is no possibility that plaintiffs' Missouri state law claims would succeed due to the remoteness doctrine.
Similarly, the Court does not find the defendants' reliance on the Supreme Court's decision in Holmes v. SIPC, 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) persuasive, because the decision also did not include an analysis of Missouri common law. Instead, the Supreme Court's decision in Holmes involved the application of the proximate cause doctrine in the context of a federal RICO action. This Court's task in this case is to ascertain whether or not plaintiffs have asserted any cause of action against the Distributor Defendants under Missouri law, not federal law. As plaintiffs note, it appears that only two Missouri cases have even cited Holmes. See Bowman v. Western Auto Supply, 985 F.2d 383 (8th Cir.1993); Chicago Truck Drivers, Helpers & Warehouse Workers Union Fund v. Brotherhood Labor Leasing, 950 F.Supp. 1454 (E.D.Mo. 1996). In both cases, the Holmes principles were applied only in the context of a federal RICO action. Therefore, the Court does not find these decisions helpful in determining whether the remoteness doctrine bars the plaintiffs' Missouri state law claims.
Because the Court believes that its objective in this case is to ascertain whether plaintiffs have stated causes of action against the Distributor Defendants under Missouri law, the Court must consider whether Missouri state courts would consider plaintiffs' claims barred under the remoteness doctrine. Defendants have cited two Missouri cases to support their position that Missouri courts would deem plaintiffs' claims barred by the remoteness doctrine. See Brink v. Wabash R. Co., 160 Mo. 87, 60 S.W. 1058 (1901); Columbia Taxicab Co. v. Mercurio, 236 S.W. 1096 (Mo.App.1921); however, the Court believes that these two older Missouri cases are not sufficient authority to support a decision by this federal court to prevent the Missouri state courts from hearing plaintiffs' claims against the Distributor Distributors. This Court, like the Eastern District of New York court in Blue Cross and Blue Shield of New Jersey, Inc., believes that a substantial period of "radical change in society, its institutions, and tort and criminal law" has passed since the early years of this century when these two cases were decided. 36 F.Supp.2d at 581.[2] In addition, both Brink and Columbia *1014 Taxicab considered claims and issues that differ from the claims advanced by plaintiffs in this case. In particular, the courts in those two cases did not address a claim brought pursuant to the Restatement of Restitution Section 115, which the Court has addressed infra. at Section II.C. and accompanying text.[3]
In this case, plaintiffs have alleged that defendants' conduct, intentionally engaging in a conspiracy to deceive the public and intentionally marketing their products to minorities and children, has caused forseeable harm to plaintiffs in the form of costs to treat smoking victims. Because proximate cause and issues related to foreseeability are "somewhat an exercise in subjectivity," Krause v. U.S. Truck Co., Inc., 787 S.W.2d 708, 710 (Mo. banc 1990), and "usually a question for the jury," Buchholz v. Mosby-Year Book, Inc., 969 S.W.2d 860, 862 (Mo.Ct.App.1998), the Court is unable to find controlling Missouri case law indicating that plaintiffs' causes of action, in particular plaintiffs' cause of action under the Restatement of Restitution Section 115, are too remote from defendants for plaintiffs to prevail. As a result, the Court does not believe that it, as opposed to a Missouri state court, should find that plaintiffs claims are barred by the remoteness doctrine in the absence of any recent Missouri cases applying the remoteness doctrine to the Missouri state law claims advanced by plaintiffs in this action.

C. PLAINTIFFS HAVE STATED A CAUSE OF ACTION AGAINST THE DISTRIBUTORS BASED UPON THE RESTATEMENT OF RESTITUTION.

Having decided that plaintiffs' claims are not clearly barred by a general theory of remoteness does not end the Court's inquiry, because defendants also allege that each of plaintiffs' individual Missouri claims fail to state causes of action against the Distributor Defendants. Plaintiffs have set forth claims against the Distributor Defendants in five counts, alleging in Count VII a cause of action for public nuisance, in Counts VIII and IX products liability based upon strict liability, in Count X products liability based upon negligence, and in Count XI a cause of action based upon the Restatement of Restitution § 115. After careful consideration of each of these claims, the Court concludes that a reasonable basis exists for plaintiffs' claims against the Distributor Defendants in Count XI. Accordingly, the Court will confine its analysis to Count XI, leaving the conclusive decision on plaintiffs' claims in the other counts to the state court's proper jurisdiction.
Defendants set forth several arguments supporting their belief that plaintiffs' claim *1015 in Count XI against the Distributor Defendants must fail. First, they note that no Missouri court has adopted or recognized this particular Restatement provision as a basis for recovery. Second, they argue that plaintiffs have failed to allege that the Distributor Defendants had a duty to provide health care to Medicaid and medically indigent patients for tobacco-related illnesses. Third, they argue that plaintiffs have failed to allege, and may not allege, that they intended to charge the Distributor Defendants for their provision of the health care benefits supplied for tobacco-related illnesses. The Court will address each of these arguments in turn.
First, the Court does not believe that the fact that no Missouri court has recognized a right of recovery pursuant to Restatement of Restitution § 115 indicates that this Court should find that plaintiffs' claim must fail. To the contrary, the Court believes that this fact suggests that such a cause of action should first be presented to a Missouri state court as opposed to this federal court for resolution if possible. The absence of any Missouri case law on this subject does not suggest either that Missouri courts have rejected such a ground for recovery or that Missouri courts have recognized such a ground for recovery. Instead, the lack of case law indicates that Missouri courts have yet to consider the issue. As a result, the Court believes that it should be presented to the Missouri courts for resolution.
On the other hand, the Court understands that the rules related to fraudulent joinder could be easily circumvented if federal courts simply held that all novel theories of law must be presented to state courts if the state courts have yet to resolve an issue. Such a policy might encourage litigants wishing to remain in federal court to suggest new theories of recovery that have little basis under the law or are otherwise frivolous. In this case, however, the Court believes that plaintiffs' theory of recovery may in fact be recognized for several reasons. First, courts in other states have adopted and recognized the Restatement of Restitution § 115. See generally City of New York v. Lead Industries Association, Inc., 222 A.D.2d 119, 125-26, 130, 644 N.Y.S.2d 919 (N.Y.App.Div.1996); Roseville Plaza Ltd. Partnership v. United States Gypsum Co., 811 F.Supp. 1200, (E.D.Mich.1992)(concluding that the Michigan Supreme Court would accept section 115 as a statement of the common law of restitution); Board of Education v. A,C, and S, Inc., 131 Ill.2d 428, 137 Ill.Dec. 635, 546 N.E.2d 580, 596-98 (1989); Nassr v. Commonwealth, 394 Mass. 767, 477 N.E.2d 987, 993-94 (1985)(analyzing claim under section 115). Recognition by these courts of that theory of recovery indicates that plaintiffs' theory is not frivolous or lacking a reasonable basis, notwithstanding the fact that no Missouri court has recognized the theory.
Second, Missouri state courts have often relied upon and adopted other provisions contained in the Restatement of Restitution. See generally Major v. Frontenac Industries, Inc., 899 S.W.2d 895, 897 (Mo.Ct.App.1995)(analyzing and quoting the Restatement of Restitution § 80); Ticor Title Insurance Co. v. Mundelius, 887 S.W.2d 726, 727 (Mo.Ct.App.1994)(citing and applying Restatement of Restitution § 9); Kiener v. Powell, 865 S.W.2d 864, 866 (Mo.Ct.App.1993)(noting that the Missouri Supreme Court cited the Restatement of Restitution § 182 with approval in Basman v. Frank, 250 S.W.2d 989, 993 (Mo.1952)). Given Missouri's reliance on the principles set forth in the Restatement of Restitution in the past,[4] the Court believes *1016 that Missouri courts would likely cite the Restatement of Restitution § 115 with approval as well. See Roseville Plaza, 811 F.Supp. at 1211 (noting that Michigan Supreme Court had never cited and rejected a provision of the Restatement of Restitution, but had in fact demonstrated a "pattern of reliance" on the Restatement, which indicated that the Michigan Supreme Court would accept section 115 of the Restatement as an "accurate statement of the common law of restitution"); Unified Sch. Dist. No. 500 v. United States Gypsum Co., 788 F.Supp. 1173, 1175-76 (D.Kan.1992)(holding that the plaintiff stated a cause of action for restitution brought pursuant to section 115 notwithstanding the fact that Kansas has not adopted section 115, because of Kansas' view of restitution and other courts' adoption of section 115); Hebron Pub. School Dist. No. 13 of Morton County v. U.S. Gypsum, 690 F.Supp. 866, 868-69 (D.N.D.1988)(noting that no North Dakota state court had "put its imprimatur" on section 115, but concluding that North Dakota Supreme Court would accept section 115, because the Court "routinely relies on Restatement formulations of the common law"); but see State of Texas v. American Tobacco Co., 14 F.Supp.2d 956, 972 (E.D.Tex.1997)(declining to find a cause of action pursuant to section 115 in the absence of any Texas state law recognizing the theory).[5] For these reasons, the Court believes that plaintiffs' claim pursuant to the Restatement of Restitution § 115 should be presented to the Missouri state courts, if plaintiffs have otherwise demonstrated that they have properly stated a cause of action pursuant to section 115.
The Court not only finds that Missouri state courts would likely allow a claim pursuant to the Restatement of Restitution § 115, but also finds that plaintiffs have stated a cause of action pursuant to that section. The Restatement of Restitution § 115 provides as follows:
"A person who has performed the duty of another by supplying things or services, although acting without the other's knowledge and consent, is entitled to restitution from the other if
(a) he acted unofficiously and with the intent to charge therefore, and
(b) the things or services supplied were immediately necessary to satisfy the requirements of public decency, health or safety." Restatement of Restitution § 115 (1937).
Plaintiffs have attempted to allege each of the elements of this cause of action in their complaint as follows:
290. Defendants, through their wrongful conduct, as described in all of the Counts of this Petition, have caused Plaintiffs in discharging their governmental public benefit functions to provide unreimbursed healthcare to Medicaid and medically indigent patients for their tobacco related illnesses.

*1017 291. Plaintiffs acted unofficiously in providing such healthcare and in intending to charge for such services.
292. The healthcare provided to Medicaid and medically indigent patients for tobacco related illnesses was immediately necessary to satisfy the requirements of public decency and health.
293. Plaintiffs are entitled to restitution from Defendants for their unreimbursed costs for healthcare provided to Medicaid and medically indigent patients for their tobacco-related illnesses. In equity and fairness, the Defendants, and not Plaintiffs, should bear the cost of tobacco related diseases and have a duty to do so.
By pleading their cause of action in this manner, plaintiffs have sufficiently stated a valid cause of action pursuant to section 115. Defendants argue that plaintiffs have not adequately alleged that defendants had a duty to provide health care to Medicaid and medically indigent patients. However, plaintiffs do allege that defendants "have a duty" to "bear the cost of tobacco related diseases" and that they were required to discharge their public benefit functions due to defendants' wrongful conduct. The Court believes that such a pleading is sufficient to survive a Motion to Dismiss,[6] especially in this case where no Missouri court has construed the elements of section 115.
If a Missouri court accepts section 115 as a cause of action, then that court can ascertain whether plaintiffs would need to plead the facts indicating the duty owed by the defendants with more specificity. The Court believes that remand is particularly appropriate in regards to the "duty" element of a section 115 cause of action, because some courts have found that such a duty "need not be absolute, and need not be of a type or degree that would otherwise give rise to legal liability." Hebron Pub. Sch., 690 F.Supp. at 869 (citing United States v. Consolidated Edison Co. of N.Y., 580 F.2d 1122, 1127 (2d Cir.1978)). Because the duty element can be such a "`flexible concept' that can be met by the `manifest responsibilities' of a party in a given `factual context' as well as by common law or statutory mandates," Id., the Court is unable to conclude that plaintiffs have not properly pled the duty element of a section 115 claim, especially when the Court has no Missouri state law to guide it on the subject.[7]
*1018 In addition, the Court finds the reasoning quoted with approval by the court in Independent Sch. Dist. No. 197 instructive on this issue. In that case, the court favorably cited a Minnesota district court for the proposition that a court considering the concept of duty under section 115 in a claim made by schools seeking the recovery of costs of removing hazards allegedly caused by asbestos should not ignore the following in regards to the concept of duty:
`the reality that the defendants may be under a duty to answer in damages  to pay for the consequences of the harm done unless the harm were removed, avoided, or abated by them.... If the defendants are unwilling to remove the product (to restore the property to an "uninjured" nonhazardous condition) notwithstanding a duty to refrain from putting abroad in the marketplace a defective product, the plaintiffs may well find themselves confronted with an emergency (the impending exposure of an unaware public of users and occupants of the plaintiffs' facilities) to which the plaintiffs must respond. When, then, defendants have been given the opportunities to restore the properties and have refused to do so, all expenses to which the plaintiffs are put in the restoration confer on the defendants a dollar for dollar benefit for which they may be liable.' 752 F.Supp. 286, 303 (D.Minn.1990)(citing State and Regents Building Asbestos Cases, File Nos. 99081, 99082 (Dakota Cty. Dist. Ct. July 23, 1986)).
The Court believes these same principles could apply to the defendants in this case, because plaintiffs allege that the "Tobacco Defendants" have fraudulently and falsely promoted, advertised, and sold a highly addictive product that causes lung cancer, throat cancer, emphysema, heart disease, and other diseases. Plaintiff's Petition, paragraphs 41-42.[8] Plaintiff claims that the Distributor Defendants have assisted in distributing tobacco related advertisements and promotions to Medicaid recipients and the medically indigent and derive economic benefits from the distribution and sale of cigarettes and tobacco products notwithstanding the fact that the knew or should have known that their actions would lead tobacco consumers to require care and medical treatment, which was eventually provided by the plaintiffs. See generally Plaintiff's Petition, paragraphs 29, 180. A Missouri court, like the court cited favorably in Independent Sch. Dist., could determine that the defendants in this matter, including the Distributor Defendants, may have been under a duty to pay for the consequences of advertising, promoting, and eventually selling tobacco products. The defendants, including the distributor defendants, were apparently unwilling to discontinue such practices notwithstanding the fact that they were placing tobacco related products in the marketplace, which eventually required the expenditure of funds by the various *1019 plaintiffs to treat tobacco related illnesses. For this additional reason, the Court believes plaintiffs' section 115 claim should be presented to a Missouri court.
In addition to arguing that plaintiffs have not properly pled the "duty" element of a claim brought pursuant to the Restatement of Restitution § 115, defendants also argue that plaintiffs' claim must fail, because the plaintiffs failed to allege that they intended to charge the Distributor Defendants for the cost of providing health care to Medicaid and indigent patients suffering from smoking-related illnesses. As the Court noted supra., plaintiffs stated in their petition that they "acted unofficiously in providing such Healthcare and in intending to charge for such services." Plaintiff's Petition at para. 291. The Court believes that this pleading by plaintiff is sufficient to warrant a remand back to the Missouri state courts. As one court has noted in interpreting this element of section 115, "an intent to charge need not be expressly pleaded-it may be inferred from the allegations of the complaint." City of New York v. Lead Industries Assoc., Inc., 1991 WL 284454 at *7 (N.Y.Sup.Ct.1991).[9] Like that Court, this Court believes that a reading of section 115 "leads to the conclusion that a party acting without another party's consent or knowledge need not necessarily expressly advise the other party of an intent to charge for services supplied." Id. Also, like the Court in City of New York, this Court believes that "it cannot be reasonably argued that the plaintiffs, as governmental bodies, intended to perform the services necessitated by the alleged activities of the defendants for their benefit without compensation." Id.[10] Instead, the Court believes that the "services rendered by the plaintiffs here were clearly not rendered for altruistic purposes, but given the extent of the services and the compelling conditions which caused the plaintiffs to act as alleged, it is fair to infer that it was plaintiffs' intent to seek restitution from those who allegedly caused the plaintiffs to incur the expenditures involved." Id.[11] For these reasons, the Court finds that plaintiffs have properly pled a claim pursuant to section 115 *1020 of the Restatement of Restitution, and the Missouri state courts should consider plaintiffs' claims pursuant to that section.

III CONCLUSION.

For the reasons set forth in this Memorandum and Order, the Court finds that plaintiffs' Motion to Remand should be granted. While defendants have set forth a persuasive argument in regards to the remoteness doctrine and supported it with a number of cases, the Court finds that the Missouri state courts have not considered the issue, especially in relation to plaintiffs' restitution claim. In the absence of persuasive Missouri case law supporting defendants' arguments that there is no possibility that plaintiffs' claims will succeed, the Court believes the case should be remanded to the Missouri state court system for resolution of the issues presented by plaintiffs.
Accordingly,
IT IS HEREBY ORDERED that plaintiffs' Motion to Remand [Document # 23] is GRANTED.
NOTES
[1] The Court has not attempted to cite all the various authorities from around the country cited by the parties in this matter. According to defendants, at least eleven federal district courts and two state trial courts have dismissed claims by plaintiffs largely or entirely on the remoteness principle. However, the Court notes that if the "weight of authority" on this issue has shifted in one direction, and all indications are that it favors the defendants, there are several cases supporting the arguments set forth by the plaintiffs as well. See Utah Laborers' Health & Welfare Trust Fund, No. 2:98CV403B (noting that "[d]espite facing similar claims and allegations, courts ruling on motions to dismiss are producing varied results in applying the doctrine of remoteness to claims against the tobacco industry").
[2] The Court has not located any Missouri cases citing Brink or Columbia Taxicab for any type of general "remoteness" principle since 1928. In fact, the Court's research reveals that the last Missouri case citing Brink was a 1909 decision of the Missouri Supreme Court and the Court has not discovered any Missouri case citing Columbia Taxicab for any sort of general principle of "remoteness." While the lack of reference to these cases could perhaps indicate that the "remoteness" principle is so thoroughly established under Missouri law that it is incapable of being overturned, the Court believes that it may also be possible that the radical changes in society and tort law have eroded the principle. The absence of recent authority on the subject combined with the various approaches of courts to the remoteness principle and the fact that Brink and Columbia Taxicab involved claims differing from at least one of the claims set forth by the plaintiffs in this case suggests that remand is appropriate.
[3] In Brink, the plaintiffs brought an action against the defendant railroad company on the ground that defendant's negligence, which resulted in the death of plaintiffs' son, caused plaintiffs to suffer the loss of $5,000.00 that their son had promised, via a contractual relationship, to them. Under these facts, the Court found that plaintiffs' damages were "too remote," because plaintiffs could only recover if their son was killed with a "willful intent to injure the plaintiffs." 60 S.W.2d at 1060. The plaintiffs in that case did not raise such issues as whether defendant's actions caused foreseeable injury to the plaintiffs or whether defendant's conduct constituted a public nuisance or subjected it to strict products liability.

Similarly, in Columbia Taxicab, a partnership brought a cause of action against a third party on the ground that the third party's negligent conduct in an accident involving a member of the partnership damaged the partnership, because it was required to pay money to commission men to perform the injured member's duties during his absence. 236 S.W. at 1098. The Court found that the damages suffered by the partnership were "too remote and indirect to constitute a basis of recovery," because of the general rule that holds that "`where one is injured by the wrongful act of another and others are indirectly and consequentially injured, but not by reason of any natural or legal relation, the injuries of the latter are too remote to constitute a basis of recovery.'" Id. (quoting Corpus Juris, vol. 17, p. 752, § 84). Again, however, the plaintiffs in that case did not raise the same claims as those raised by the plaintiffs in this instant matter.
[4] Missouri courts have not only relied upon the Restatement of Restitution in the past, but have also recognized restitution as a remedy for unjust enrichment. Blue Cross Health Servs. v. Sauer, 800 S.W.2d 72, 75 (Mo.Ct.App.1990)(quoting the Restatement of Restitution § 1). As plaintiffs note, section 115 is grounded on principles of unjust enrichment. Independent Sch. Dist. No. 197 v. W.R. Grace & Co., 752 F.Supp. 286, 303 (D.Minn.1990).
[5] The Court notes that the district courts in Hebron, American Tobacco Co., and Unified Sch. Dist. were not deciding whether the state courts in their respective states would recognize section 115 in a Motion to Remand, but were instead determining whether they, as courts with unquestioned jurisdiction over the subject matter, should allow claims under section 115. Notwithstanding the fact that the state courts had not recognized causes of action pursuant to section 115, two of the three courts allowed the causes of action to proceed. These cases would offer persuasive authority to this Court that Missouri state courts also allow this cause of action brought by plaintiffs pursuant to section 115 to continue in the event that this Court had unquestioned jurisdiction over these claims. However, the Court believes this authority is even more persuasive in a Motion to Remand, because if it is likely that Missouri courts, like the courts in North Dakota and Kansas, would recognize such a cause of action, but have not yet done so, then those courts, not this district court, should have the first opportunity to make that determination if possible. The option to have a Texas state court first consider whether to adopt section 115 was not before the court in American Tobacco Co.
[6] In Drayton Pub. Sch. Dist. No. 19 v. W.R. Grace & Co., 728 F.Supp. 1410, 1415 (D.N.D. 1989), the Court noted that pursuant to section 115, a plaintiff must prove the following: "(1) That the party whose duty it was to act refused to do so through explicit or implicit means; and (2) There was a need to act immediately to protect the public health; and (3) That the party who failed to act had a duty to do so." Finding that the plaintiff had pled these factors, the Court held that it could not grant the defendants' request for summary judgment. Id. at 1415.
[7] Defendants rely almost entirely upon A, C & S, Inc., 131 Ill.2d 428, 137 Ill.Dec. 635, 546 N.E.2d 580 (1989), and a case relying upon it, Illinois v. Philip Morris, Inc., No. 96 L 13146 (Ill.Cir.Ct. Nov. 13, 1997) in arguing that plaintiffs have failed to set forth the duty owed by the Distributor Defendants. In Philip Morris, Inc., the Court stated, by citing to A, C & S, Inc., that "Illinois courts have interpreted Section 115 claims to require plaintiff to plead a specific legal duty owed by the defendant to the injured party." The Court believes that such a pleading requirement is not required in all states applying section 115, as cases like Hebron Pub. Sch. and United States v. Consolidated Edison Co. of N.Y. demonstrate. Applying the more stringent pleading requirement for the duty element of a section 115 claim, the Court in A, C & S, Inc. dismissed various school districts' claims against asbestos manufacturers to recover the costs of avoiding hazardous conditions caused by asbestos. 546 N.E.2d at 465. However, other courts have come to contrary conclusions in cases brought against asbestos manufacturers by entities who were required to remove asbestos for health reasons. See generally City of New York v. Lead Industries Assoc., Inc., 222 A.D.2d 119, 644 N.Y.S.2d 919, (N.Y.App.Div.1996); Independent Sch. Dist. No. 197 v. W.R. Grace & Co., 752 F.Supp. 286, 302-04 (D.Minn.1990)(noting a number of cases across the country finding that section 115 applies to asbestos removal cases); Drayton Pub. Sch. Dist., 728 F.Supp. 1410; Hebron Pub. Sch. Dist., 690 F.Supp. 866. Even defendants concede in their surreply that "most of the asbestos cases require that a section 115 restitution claim be based upon a legal duty rather than some amorphous concept of `manifest responsibility.'" Surreply at p. 14 (emphasis added). The fact that there are inconsistencies in decisions and standards, even if a majority rule has emerged among the various states, favors remand in this case, especially when the Missouri state courts have not yet fixed their own standards for cases of this kind. Because Missouri courts might follow the less rigid standards set forth in cases like Hebron as opposed to the more stringent standards applied in A, C & S, Inc., even if the more stringent standard has become the "majority" rule, the Court is unable to conclude that there is no possibility that the plaintiffs could establish the duty element of their cause of action.
[8] Plaintiffs have realleged and incorporated all previous allegations in their petition in paragraph 289 under their claim in Count XI pursuant to the Restatement of Restitution § 115.
[9] In City of New York, the plaintiffs, the City of New York, the New York City Housing Authority and the New York City Health and Hospitals Corporation, sought damages from the defendants, lead pigment manufacturers and their industry association, for, among other things, expenditures in relation to the presence of toxic lead paint, including the detection of lead paint and the testing and treatment of children with high lead levels. 1991 WL 284454 at *1.
[10] Many of the plaintiffs in this case are governmental bodies as well.
[11] Defendant has cited contrary authority on this element of the Restatement of Restitution as well. However, the Missouri state courts have not considered the elements of the Restatement of Restitution. Therefore, a Missouri court may adopt the approach of the New York Supreme court in City of New York or the approach adopted by the Massachusetts courts in Nassr, 394 Mass. 767, 477 N.E.2d 987, 994 (1985) and the Illinois circuit court in Philip Morris, Inc., which appear to hold that a plaintiff must expressly plead that he or she actually intended to charge the defendants for the expenditures at issue when services were supplied for harms created by the defendants. Because the Court does not know which approach a Missouri court would adopt and plaintiffs' claim would survive under one of the approaches, the Court must conclude that there is a possibility that plaintiffs' claim would survive. For this reason, remand is appropriate. In addition, the Court notes that even the Court in Nassr left open the possibility that an intent to charge for services could be inferred when it noted that a party argued "correctly that an intent to charge may be inferred" under section 115. 87 Ill.Dec. 648, 477 N.E.2d at 777. However, the Court merely found, under the facts of that case, that they could not "rule as a matter of law that the judge was required to infer an intent to charge," when the judge specifically found a lack of evidence indicating such an intent to charge. Id. (emphasis added). Here, however, plaintiff has indicated an intent to charge, and this Court is not dealing with evidence at this early stage of this proceeding. At the Motion to Dismiss stage, the Court believes that the Nassr decision adds nothing to defendants' argument, but in fact suggests that plaintiffs' have sufficiently set forth this element of a section 115 claim.